## Case No. 16,262.

### UNITED STATES v. SHACKFORD.

[5 Mason, 445.] [1]

Circuit Court, D. Maine.  May Term, 1830.[2]

SHIPPING—NON-DELIVERY OF REGISTER—LIABILITY OF MASTER.

To affect the master of a vessel with the penalty provided for his non-delivery of a temporary register, granted under the 3d section of the coasting act of 1793, c. 52 [1 Story's Laws 286; 1 Stat. 306, c. 8], there must not only be an arrival at the port, to which the vessel belongs, but it must be an arrival there, not by accident, or from necessity, but intentionally, as one of the termini of the voyage.

[Cited in U. S. v. Helriggle, Case No. 15,344; Parsons v. Hunter, Id. 10,778; Toler v. White, Id. 14,079; Harrison v. Vose, 9 How. (50 U. S.) 378; The Javirena, 14 C. C. A. 350, 67 Fed. 155.]

[Error to the district court of the United States for the district of Maine.]

Debt for the penalty of one hundred dollars, against the defendant [Jacob Shackford], as master of the schooner Sarah, of Eastport, for not delivering up a temporary register, obtained in the district of New York, within ten days after the arrival of the vessel at Eastport, where she belonged, according to the provisions of the 3d section of the coasting act of 1793, c. 52. The case came before the district court upon an agreed statement of facts, as follows: "In this case it is agreed, that the schooner Sarah, of which the defendant was master, belonged to Eastport, and was there duly enrolled and licensed; and thence she proceeded to New York, where she took a temporary register and sailed on a voyage to St. Johns, New Brunswick; landed her cargo there, and took a return cargo and passengers for New York. On her way to the latter place, she stopped at Eastport, in the American waters, and within the district of Passamaquoddy, and anchored off the town, and waited about two hours for the tide; during which period, she landed some passengers and their baggage, having permit from the custom-house for that purpose; took on board some other passengers and small stores, and sailed under the same temporary register to New York, and did not deliver up her temporary register to the collector of Passamaquoddy within ten days. Upon this evidence, the cause is submitted to the decision of the judge, reserving the right of appeal, as from a judgment rendered on verdict."

The district court pronounced a judgment in favour of the defendant [Case No. 16,263], upon which a writ of error was brought to the circuit court.

Mr. Shepley, U. S. Dist. Atty.
Mr. Greenleaf, for defendant.

STORY, Circuit Justice. The third section of the coasting act of 1793, c. 52 [1 Story's Laws, 286; 1 Stat. 306, c. 8], provides, that the collectors of the several districts may enroll and license any ship or vessel, that may be registered, upon such registry being given up, or register any ship or vessel that may be enrolled, upon such enrolment and license being given up. And when any ship or vessel shall be in any other district than the one to which she belongs, the collector of such district, &c., shall make the exchanges aforesaid. But in every such case, the collector to whom the register or enrolment and license may be given up, shall transmit the same to the register of the treasury; "and the register or enrolment and license granted in lieu thereof, shall, within ten days after the arrival of such ship or vessel within the district, to which she belongs, be delivered to the collector of the said district, and be by him cancelled. And if the said master or commander shall neglect to deliver the said register, or enrolment and license, within the time aforesaid, he shall forfeit one hundred dollars."

The question upon the facts is, whether in this case there was an arrival of this vessel within the district of Eastport, to which she belongs, in the sense of the act, so that the penalty of one hundred dollars was incurred by the neglect of the master to deliver up the temporary register to the collector of the district within the ten days prescribed by the act. The argument of the district attorney is, that every coming into the district is an arrival, in the sense of the act, although it may not be in the course of the voyage on which the vessel is bound, nor within the original contemplation of the parties when it was undertaken. It goes then to this extent, although not so stated, in terms, that if the vessel come in from necessity, or be driven in by stress of weather, or seek the port to avoid capture by an enemy, it falls within the reach of the act, as much as if it was a voluntary arrival, however short may be the stay, or fugitive the purpose of it. The argument on the other side is, that the arrival must be within the district as a port or place of destination on the business of the voyage, and so contemplated by the parties, as one of the termini, if not the sole terminus of it.

It is doubtless true, that the term "arrival" is susceptible of either interpretation, according to the language of the context, and the objects of the legislature. It may be used in the most general sense, as importing a mere entry within the local limits of the district; or it may be restrained to such an entry as is purely voluntary, for objects connected with the voyage, and a part of the enterprise. Whether the one sense or the other is to be adopted, depends upon a just survey of the language, and the policy of the statute. There are many instances in our revenue laws, where the word is used in the more limited as well as in the larger sense. In the 22d section of this very act,

---

[1] [Reported by William P. Mason, Esq.]
[2] [Affirming Case No. 16,263.]

there is a provision applicable to coasting vessels putting into a port, other than that to which they are destined, where the master is required to make a report to the custom-house within twenty-four hours after his arrival, if he continues so long in port. The word "arrival" is here manifestly used in its most general sense, as a mere putting or coming into port, for any purpose whatsoever. On the other hand, there seems little doubt, that the arrival, spoken of in the sixth section of the act, refers to an arrival at the port of destination, as the arrival spoken of in the 15th and 17th sections certainly does.

The question then resolves itself into a question of the true construction of the terms of the act, with reference to the context and policy of the act. Now, we are to recollect, that this is a penal clause, and if either of the two constructions may be adopted, and each tallies with the language, and interferes with no known policy of the act, that ought to be adopted which is most liberal to the citizen, and burthens him with the least restraints. But if one construction be exceedingly inconvenient, and the other safe and convenient, a fortiori ought the latter to be deemed the true exposition of the legislative intention; for it can never be presumed that the government means to impose irksome regulations, unless for some known object, or from some express declaration.

Now, the plain object of the legislature is, generally, to have vessels registered, enrolled, and licensed, in the ports or districts to which they belong. But it is not required if a change from a registry to an enrolment, or è contra, is desirable to the owner, with a view to his own accommodation or business, when the vessel is absent from her home-port, that she should be compelled to return to the home-port directly, without embarking in any intermediate voyage. The language of the act justifies a totally different construction. If a vessel is enrolled, and is in a distant port, the owner may surrender her enrolment, and have her registered so as to embark on a foreign voyage; and it is no violation of the policy of the act, that she should perform several foreign voyages under such temporary register before her return to the home-port. All that is required is, that when she does return, the temporary register shall, within ten days after her arrival there, be surrendered. No period is provided, after which the temporary register shall cease to have a valid operation, unless there be such an arrival at the home-port. No known policy of the act is broken in upon by any delay to return, however long. The object of the legislature is, to promote the interests of the ship-owner, and the encouragement of trade. The natural presumption is, that the vessel will return home, that she has, so to say, the animus revertendi, as soon as the interests of the owner require it; and as the ship in the mean time carries in all her papers, complete proofs of her domicil and her ownership, there is no danger of loss to the revenue of the government, or of mistake of her real character and trade.

If the district attorney is right in his argument, then, in all cases of a change of the ship's papers, the vessel may be materially retarded in her commercial operations from unforeseen casualties. Suppose a vessel, engaged in a foreign voyage, is driven by storm or other necessity into her home-port, it will then become the duty of the master, even if his stay might not otherwise be intended for an hour, or a day, to wait until he can communicate with the custom-house, and surrender his papers and procure new ones. Now, in the home-port, in order to procure a new register or enrolment, the owner is required to take an oath of ownersip, and the master, if present, an oath of his citizenship. The owner may be temporarily absent on a journey; the vessel may arrive in the night, or in hours when the custom-house is closed; she may arrive on a Sunday; or at an out-port at a great distance from the collector's residence; she may arrive in an inclement season, when access to him is difficult; her voyage may be vitally affected by the retardation of a few hours or days. In cases of this sort, (and many such may be imagined,) it is easy to see, if a rigid construction be adopted, that great embarrassments, if not material injuries, may arise to merchants and owners, from causes wholly beyond their control. Could the legislature have intended to impose restraints upon trade, unless for some great and obvious benefit? Ought not maritime laws, affecting employments so liable to accidents and disasters, and unforeseen emergencies as navigation and trade, to be liberally construed in doubtful cases, so as to ward off, rather than to add weight to, the pressure of uncontrollable misfortunes? My opinion is that they ought, and that it would be highly inconvenient, not to say unjust, to make every doubtful phrase a drag-net for penalties.

It appears to me that the true interpretation of the section under consideration is, that the arrival of the vessel pointed at, is an arrival within the scope of the voyage; an arrival in the district, not only voluntarily, but as a port of destination, or terminus of the voyage. I do not say the sole or the ultimate port of destination, for I readily admit, that if the home-port constitutes one of the places within the contemplation of the parties, where the vessel is to stop for the trade or business of the voyage, that would bring the case within the act, notwithstanding any ulterior destination. But a mere arrival in the district in the transit from one port to another, either accidentally or voluntarily, but for no purpose originally connected with the employment or objects of the voyage, and as a mere emergent incident, or

fortuitous occurrence, is not within the purview or policy of the act. The act contemplates an intention to abide in the port, or at least it indulges a supposition that the vessel may, in some cases, remain there ten days; for it inflicts no forfeiture for a non-delivery within that period. It looks, therefore, to some intentional arrival, which may last for such a period by design; and this may well be deemed a provision unlocking its real meaning.

Upon the whole, I entirely concur in the opinion of the district judge, and think that an arrival within the purview of the section must be an arrival with an intention to return to the home-port, as one of the termini of the voyage, and in the course of prosecuting it. It must not be a mere touch or stay for accidental and transitory purposes, having nothing to do with the original enterprise.

The judgment must therefore be affirmed.

SHIPPING—NON-DELIVERY OF REGISTER—LIABILITY OF MASTER.