## Case No. 10,778.
### PARSONS v. HUNTER.
[2 Summ. 419.] [1]

Circuit Court, D. New Hampshire.   Oct. Term, 1836.

ACTION FOR PENALTY—LIMITATIONS—CONSULAR ACT OF 1803.

1. Under Consular Act 1803, c. 62, § 2 [2 Story's Laws, 884; 2 Stat. 203, c. 9], the penalty of $500 for not depositing the ship's register with the consul, on arrival in a foreign port, must be sued for within two years, the limitation prescribed by Act 1790, c. 36, § 31 [1 Story's Laws, 90; 1 Stat. 119, c. 9], it not being a revenue law within the meaning of Act 1804, c. 40, § 3 [2 Story's Laws, 941; 2 Stat. 290].

[Cited in U. S. v. Six Fermenting Tubs, Case No. 16,296.]

2. Semble, that an information does not lie for such penalty; but an action of debt, in the name of the consul is the proper remedy.

[Cited in Walsh v. U. S., Case No. 17,116; Gould v. Staples, 9 Fed. 161.]

3. Semble, that any voluntary arrival in a foreign port, in the course of the voyage, although for advices only, and not the port of final destination, is within the purview of the act.

[Cited in Passenger Cases, 7 How. (48 U. S.) 537; Harrison v. Vose, 9 How. (50 U. S.) 384.]

[Error to the district court of the United States for the district of New Hampshire.]

Information for the penalty of $500 for not depositing the ship's register, &c. with the consul of the United States, on arrival in a foreign port, contrary to Consular Act Feb. 28, 1803, c. 62, § 2 [2 Story's Laws, 884; 2 Stat. 203, c. 9]. The parties in the district court of New Hampshire, agreed to the following statement of facts: That Robert R. Hunter, Esq., is the lawful accredited American consul, resident at the port of Cowes, in the Isle of Wight, and the dependencies thereof. That the said Isle of Wight, is a foreign port. That the said Isaac D. Parsons was, on the 5th day of August, A. D. 1832, master of a certain ship, called the Olive and Eliza. That the said ship then belonged, and was owned by citizens of the United States. That the said Parsons sailed the ship to Matanzas, in the island of Cuba, whence he took in a cargo of sugars, consigned to a certain mercantile house in the city of London, in the United Kingdom of Great Britain and Ireland. That as he was directed by his consignees at the city of London, the 7th day of August A. D. 1832, on his way from Matanzas to the city of London, touched at Cowes, in the Isle of Wight aforesaid for advices, that he neglected to deposit the register of the said ship, with the American consul at that place. That this was not, but that London was, his port of destination. That he touched at the port

---

1 [Reported by Charles Sumner, Esq.]

of Cowes merely for advices, and for no other cause. That he made no entry at the last mentioned port. That he arrived in the harbor thereof on Sunday morning, the 7th day of August aforesaid, and left the said port for London on Monday morning, the 8th day of the said August; at which last place, he arrived in safety, made a legal report and entry at the custom house of the said city of London, and deposited the register of the said ship Olive and Eliza, with Mr. Aspinwall, the American consul, at the port of London aforesaid, which said register remained with the said consul, till he obtained a clearance of the said ship at the said custom house, for her return to the United States aforesaid. If the court, upon the above statement of facts, shall be of opinion, that the said Isaac has incurred the penalty mentioned in the said information, then judgment shall be rendered against the said Parsons, for the sum of five hundred dollars and costs —otherwise the United States shall become nonsuit. Upon these facts, the district court gave judgment for the penalty, in favor of the United States [case unreported]; and upon that judgment, the present writ of error was brought by the original defendant.

C. B. Goodrich, for plaintiff in error.

Mr. Hale, Dist. Atty., for defendant in error.

STORY, Circuit Justice. Act 1803, c. 62, § 2 [2 Story's Laws, 884; 2 Stat. 203, c. 9], makes it the duty of every master of a ship, belonging to citizens of the United States, "on his arrival at a foreign port, to deposit his register, sea-letter and mediterranean passport," with the consul at such port, if any there be; and in case of refusal or neglect of the master to deposit such papers, he is "to forfeit and pay five hundred dollars, to be recovered by the said consul, &c. in his own name, for the benefit of the United States, in any court of competent jurisdiction." There is no question, but that an action of debt in the name of the consul would lie for the recovery of the penalty. But the present is an information of debt, in which the district attorney "comes into court and in the name of Robert P. Hunter, consul of the United States for the port of Cowes, Isle of Wight, and the dependencies thereof, who sues for the benefit of the United States, gives the court to understand, &c." And one of the questions raised upon this writ of error is, whether an information in such a form lies in this case.

Upon the more general question presented by the facts, I own that I have felt no inconsiderable doubt and difficulty. It appears, that the ship voluntarily arrived at Cowes, having on board a cargo destined for London, and remained there for one whole day, and then departed for London. The sole object of the touching at Cowes was for advices, and no entry was made at the custom house there. The master did not deposit his register, &c. with Hunter, the American consul at Cowes;

and the question is, whether under such circumstances the forfeiture has been incurred. The statute in express terms declares, that every master of an American ship "on his arrival at a foreign port," shall deposit his papers; and if by this is meant a mere technical arrival in a foreign port, it is not denied, that the penalty has been incurred. But the argument for the plaintiff in error is, that by "arrival" the statute does not mean a mere coming within the limits of a port, but a coming into the port for the lading or unlading of goods, or for other purposes of trade, and making an entry there; and that a mere touching at a port for advices or orders, or to ascertain the state of the market, is not an "arrival" in the sense of the statute. In support of the argument the case of Hopeful Tyler, Consul, v. John White [unreported], before the district judge of Maine at December term, 1834, has been cited; and it must be admitted, that the decision has been drawn up with great care and ability by that learned judge, and is directly in point. It is, however, encountered, on the present occasion, by the opposing opinion of my learned brother, the district judge of New Hampshire, who has not hesitated to declare, that whenever the master of a ship voluntarily enters a foreign port, whether it be the port of final destination or not, and anchors his ship, and there waits either a longer or a shorter time and for any purpose whatsoever, it is an arrival at a foreign port within the meaning of the statute.

That this latter opinion is in exact coincidence with the literal import of the terms of the statute will not be disputed; and the real difficulty in the case is to find in the language the just materials for a more liberal construction, suited to the common exigencies of commerce and navigation. There is no doubt, that the term "arrival" is sometimes used in our revenue and navigation laws in the common sense of coming into a port, and sometimes in the sense of coming into a port of entry or destination for particular objects connected with the voyage. No universal rule of construction, therefore, can be adopted, which is applicable to all cases; and we must be governed mainly in the interpretation of the word by the particular context, with which it stands connected. That was the view entertained by this court in the case of U. S. v. Shackford [Case No. 16,262]. But, I think, I may say, that unless there be something in the context, which deflects the word from its ordinary meaning, and shows a clear intention to use it in a more general or a more limited sense, the former ought to prevail. That the construction given to the statute by the judge of the district court of Maine is eminently calculated to facilitate the operations of commerce and navigation I readily admit; and the reasons urged by him are of great cogency to sustain his interpretation, that the term "arrival" means arrival at a voluntary port of destination for purposes of

trade. But the difficulty is to find any such purposes either avowed or implied by the language of the statute. Cowes was a port of destination, though not of final destination. The arrival there was voluntary and intentional and constituted a terminus of the voyage for the purpose of receiving or waiting for advices. Suppose the ship had remained there ten or twenty days, waiting for advices, would the case have been without the statute? If the object of the statute is to ascertain the genuineness of the character of vessels professing to be American, or that they have at all times on board the proper American papers, that policy would be equally promoted by requiring the production of the papers in all cases of a voluntary arrival. If the protection of all vessels, bearing the American flag, as such, on their arrival in foreign ports, be the object of the statute, whenever their title to protection is, or may be vouched by a public officer or consul, then it equally applies to every case of a voluntary arrival. But I do not profess to see, from the terms of the act, what is the main policy, on which this particular provision is founded. The case stands naked upon the dry terms of the section; and I feel great embarrassment in limiting those terms to an arrival in the foreign port for the purpose of trade. In the view, however, which I take of the present case, it is not absolutely necessary to decide this question.

The other question already suggested, whether this is a case, in which an information lies, is one, upon which I have far less difficulty. The statute has prescribed no form of action for the recovery of the penalty. An action of debt is the known, and usual remedy for penalties, when the suit is brought by a private person. An information of debt for a penalty doubtless lies in all cases, where the government sues for a penalty in whole or in part. But it is a prerogative remedy. I have not been able to find a single case, where, independent of some statute provision, any information for a penalty has been brought or maintained by a private person in his own name alone. In Bacon's Abridgment (A), it is said that "where by many penal statutes the prosecution upon them is by the acts themselves limited to be by bill, plaint, information or indictment, there, without doubt, the prosecution may be by information, as well as by any other of these methods. Also of common right such an information, or an action in the nature thereof, may be brought for offences against statutes, whether they be mentioned by such statutes or not, unless other methods of proceeding be particularly appointed, by which all others are impliedly excluded." See, also, Hawk, P. C. (by Curwood) c. 26, §§ 2, 17; Bac. Abr. "Actions Qui Tam," A; Com. Dig. "Action upon Statute," F, 1; Id. "Information," A, 3. To language so general, general verity only can, at most, be attributed. It is clear, that in cases of penal statutes, if the whole or a part of the penalty is given to the crown, an information will lie. But there the king sues proprio jure, in his own name. That a private informer or other private person may sue by information "of common right" for a penalty, independent of any statute authority, requires some authority to support it. Mr. Justice Blackstone (4 Bl. Comm. 308) says: "Informations are of two sorts, those, which are partly at the suit of the king and partly at that of a subject; and secondly, such as are only in the name of the king. The former are usually brought upon penal statutes, which inflict a penalty upon the conviction of the offender, one part to the use of the king, and another to the use of the informer." So that an information in the name of a private person alone seems not to have been deemed by that learned commentator to be a process known to the common law. By St. 18 Eliz. c. 5, § 1, it is provided "that none shall be admitted or received to pursue against any person or persons upon a penal statute, but by way of information or original action, and not otherwise;" which seems to authorize by implication the suing by information on penal statutes generally. But this is merely by force of the statute.

In the present case the suit is required to be brought exclusively in the name of the consul for the benefit of the United States. It is, therefore, to be treated as a private suit, and not as a prerogative suit. And I can perceive no ground, upon which the district attorney is ex officio entitled to proceed by way of information in the name of the consul for the benefit of the United States. The consul must sue in his own name; and not under the protection of the district attorney. But the case need not be disposed of upon this point; for there is another objection, which in my judgment is clearly fatal. Act 1790, c. 36, § 31 [1 Story's Laws, 90; 1 Stat. 119, c. 9], provides that "no person shall be prosecuted for any fine or forfeiture under any penal statute, unless the indictment or information for the same shall be found or instituted within two years from the time of committing the offence or incurring the fine or forfeiture." Act 1804, c. 40, § 3 [2 Story's Laws, 941; 2 Stat. 290], provides that "any person or persons guilty of any crime arising under the revenue laws of the United States, or incurring any fine or forfeiture by breaches of the said laws, may be prosecuted, &c., provided the indictment or information be found at any time within five years after committing the offence, or incurring the fine or forfeiture." It appears to me, that the act, on which the present information is founded, is in no just sense a revenue law; and, therefore, if the present information be maintainable at all, it can be so only, if brought within two years after the penalty was incurred. The statement of facts finds the offence was committed, if at all, between the 5th and 7th day of August, 1832. The

information was not filed until the March term of the district court, 1835; so that the two years had then fully elapsed. In suits on penal statutes, the statute of limitations need not be pleaded; but may be taken advantage of under the general issue. Bull. N. P. 195. A fortiori, it constitutes a good bar upon a statement of facts agreed by the parties, when the facts establish, that no suit lies from the lapse of time.

Upon this last ground the judgment must be reversed; but without costs. I am authorized to say, that the point as to the statute of limitations was not made before the district judge; and that the point, whether an information would lie was considered doubtful by him; and that he yielded his opinion to the suggestion, that it was the usual form of the suit in Massachusetts.