## Case No. 5,212.

### GANT v. PEASLEE.

[2 Curt. 250.][1]

Circuit Court, D. Massachusetts. May Term, 1855.

Mr. Griswold, for plaintiff.
Mr. Hallett, Dist. Atty., contra.

CURTIS, Circuit Justice. This is an action for money had and received, to recover of the collector of the port of Boston, money alleged to have been illegally exacted, in payment of duties on merchandise imported into that port by the plaintiff. The evidence showed that a parcel of figs, admitted to be the produce of Turkey, were shipped at Smyrna by the plaintiff, on board a steamer called the Melita, under a bill of lading, which made them deliverable in Boston. The Melita belonged to the British and North American Mail Steamship Company, and was one of a line plying between Liverpool and Smyrna, and other ports in the Mediterranean, in connection with the line of British steamers which ply between Liverpool and Boston and New York. And the bill of lading contains a memorandum, to this effect, that the goods are to be forwarded to Boston by the first British and North American Royal Mail Steamship Company's steamer, at shipper's risk, and company's expense. The freight stipulated is twelve pounds sterling per ton, for the entire transportation from Smyrna to Boston, via Liverpool. When the goods were entered at the custom-house, the defendant added to the charges shown by the invoice, the estimated cost of freight from Smyrna to Liverpool, at three pounds per ton, which amounted to $435.60, and on this amount, a duty was assessed. The plaintiff protested in writing, before payment, against paying a duty on the freight from Smyrna to Liverpool, and brings this action to recover it back. These duties were assessed under the tariff act of July 30, 1846 (9 Stat. 42), but the question now before me, depends upon the provisions of a subsequent law, of March 3, 1851 (9 Stat. 629, § 1), in conformity with which, the dutiable value of merchandise was required to be ascer-

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

tained. The law directs that there shall be added to the appraised value or price of the merchandise "all costs and charges, except insurance, and including in every case a charge for commissions, at the usual rates, as the true value at the port where the same may be entered, upon which duties shall be assessed."

The first question is, whether a charge for freight from Smyrna to Liverpool, could lawfully be added, as being one of the "charges" within the meaning of this act. The direction to add "charges" to the cost of the goods, to arrive at their dutiable value, was first given by the act of January 29, 1795 (1 Stat. 411), was repeated in the collection act of 1799, § 61 (1 Stat. 673), and in many laws on this subject since that date (3 Stat. 732, § 5; 4 Stat. 273, § 8; Id. 591, §§ 7, 15; 5 Stat. 563, § 16; 9 Stat. 42, § 8). And it has been uniformly held and practised by the treasury department, under all these laws, that freight was not a dutiable charge. It is so stated in terms by the circular of the secretary of the treasury of the 27th of March, 1851, which is found in 1 Mayo, p. 45, of Treasury Circulars. This practical construction placed on former laws, on this subject, and which had continued for more than half a century, when the act in question was passed, must be considered as known to, and silently adopted by congress, when it used in this law the same phraseology, employed in the former laws thus construed. I consider it, therefore, too late now to contend for the general proposition that freight is a dutiable charge within the meaning of the act of 1851. If so, it would seem difficult to maintain, that an estimated freight, pro rata itineris, is a dutiable charge, when the merchandise, instead of coming by the most direct route from the country of its production, and from which it is actually exported to the United States, comes by a more circuitous route, passing through a port of another country. For in such a case, it is still freight, paid for the transportation of the merchandise, to the United States.

The argument on the part of the collector is, that the act of 1851, has made it the duty of the collector, to ascertain the market-value, at the period of the exportation to the United States, in the principal markets of the country from which the same shall have been imported into the United States, and to add thereto all costs and charges; that in this case England was the country from whence the figs were exported into the United States; that consequently, their market value there, and the costs and charges there, were to be ascertained; that if it was not lawful to add the cost of freight from Smyrna to Liverpool, as one of the costs or charges, yet that the expense of bringing the figs to England must have embraced their value in Liverpool, and that it is immateral to the plaintiff, whether that expense goes into the dutiable value in the form of costs, or charges on the figs, or

as part of their market value in Liverpool. This is an ingenious view of the defendant's case, and seems to be the best which it admits of; but I am of opinion it is not consistent with the law.

If it were conceded that, in this case, England was the country of exportation, it could not be maintained that the freight paid for carrying the figs to England, was one of the costs or charges within the meaning of this act of 1851. Because, in that case, the act requires the market value in England to be ascertained, and the costs and charges added; now the cost of carrying the figs to England necessarily enters into and affects their market value in England, and is included, when that market value is ascertained; and, of course, is not to be again added as one of the costs or charges. Besides, there is no legitimate mode of ascertaining the amount of such a charge. No freight was agreed on, in this case, for transporting the property from Smyrna to Liverpool. The actual freight was paid, for the transportation to the United States; and when the collector added £3 per ton for freight to Liverpool, he did not add an actual charge, paid by the importer, but a supposed sum, estimated by himself, as being what it would have cost to carry the property to Liverpool, if that had been, as it was not, its place of destination.

Nor can it be admitted that the other position is tenable, that, the market value in England being the object of inquiry, it is immaterial whether the cost of carrying the property there is included in that market value, or is added to the invoice in order to ascertain it. It is obviously true that the cost of carrying the property to England, enters into and affects its market value in that country. But it by no means follows, that at any given date this cost of transportation enhances the value there precisely to the amount of the freight. Market value is affected by many causes, the chief of which is supposed to be the extent of the supply, compared with the demand; and it is plain, that to take the invoice cost and charges at Smyrna, and add to them the cost of transportation to Liverpool, would not be a legitimate mode of ascertaining the market value of figs, in Liverpool. So that conceding England to be the country whence the figs were exported, to the United States, the market value there was not ascertained, nor attempted to be ascertained. The collector undoubtedly treated the market value in Smyrna, as shown by the invoice, to be the true market value, and added £3 per ton as one of the charges, or costs, at Liverpool, which was the last port of departure to the United States.

But I am satisfied that there is another defect in the position assumed by the defendant's counsel. I do not think England, the country from which these figs were imported into the United States, within the meaning of the Act of 1851. They were

purchased at Smyrna, and there shipped for the United States, under a consignment to the plaintiff's agent in Boston. When they left the country of their production, they were destined for the United States. It was not intended that they should enter any other market, or become part of the merchandise of any other country than the United States. When the figs left Symrna, if the question had arisen, to what country have they been exported, the answer must have been, to the United States. It would no more have been true, in point of fact, that they were exported to England, than that they were exported to Malta, or Trieste, or any other port, where the steamer, which carried them, might stop, as she came down the Mediterranean. Their going to Liverpool, and being trans-shipped there, affected only the route and means of their transit, not their place of departure, or destination. It is well known that large importations are made into the United States from Germany and Switzer-land. Merchandise, the product or manufacture of those countries, is purchased in their markets, invoices made, and the property brought by land, or interior navigation to the coast, and there shipped. It appears by the treasury circular already referred to, that contemporaneously with the passage of this act of 1851, an interpretation was put on it by the department, under which the country of production was, in these cases, deemed the country whence the merchandise was imported into the United States. In my opinion, this interpretation was sound. It assumes that, though the merchandise passes through different countries, and the vehicles for its transportation are changed, and though it arrives in the United States in a vessel on board which it was placed in France or Belgium; yet if it was bought by the market of the country of production by the importer, and was sent by him thence to the United States, it was imported into the United States from the country of production, within the true meaning of this act; and I apprehend it can make no difference, in this particular, whether the change of the vehicles of transportation, is from one steamship to another, or from land to water carriage.

It may be urged however, and I suppose this is the ground, upon which the practice complained of in this case, has been adopted, that when merchandise is purchased in the country of its production, and transported to the sea-coast and there shipped, the cost of the carriage to the sea-coast is added, as one of the costs and charges. I suppose this is the practice, under this law, and I do not question its correctness. Viewing the subject logically merely, it might be difficult to distinguish those costs and charges of transporting merchandise from Geneva, for instance, to Havre, from the cost of transportation from Smyrna to Liverpool. So, reasoning a priori, it would be difficult to show

that marine freight was not a cost or charge, which enhanced the dutiable value of merchandise, at its place of destination. But the law has made a distinction between freight for transporting property on the sea, and other charges; and while it requires these to be included, it requires that to be excluded; and whether the voyage be one passage only, or several passages between different ports, beginning at the place of exportation, and ending at the place of importation, and whether it be performed in one or two bottoms, what is paid for the whole transportation on the sea, is freight, and is not to be included as a dutiable charge, whether it be incurred in one port or another, or the whole of the voyage of importation. In the case of Grinnell v. Lawrence [Case No. 5,831], Mr. Justice Nelson had occasion to consider a similar question arising under the tariff act of 1842 (5 Stat. 548). Though not identical with this case, it has a strong bearing on it, and has materially aided me in coming to a conclusion concerning it.

In conformity with the agreement of the parties, a verdict is to be directed for the plaintiff, for the amount paid, on account of duties assessed on the charge for freight.