### THE JAVIRENA.

### GONZALES v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. February 5, 1895.)

No. 335.

SHIPPING—VIOLATION OF CUSTOMS LAWS — DEPARTURE FROM COLLECTION DISTRICT WITHOUT ENTRY.

A Spanish fishing smack from Havana, which anchored within five miles of the mainland of Florida for the purpose of repairing a disabled mast, and was not bound to, and did not enter, any port of the United States, is not within the provisions of Rev. St. § 2773, and is not liable to a penalty for departing from the collection district without making report or entry. The Apollon, 9 Wheat. 362, followed.

Appeal from the Circuit Court of the United States for the Southern District of Florida.

This was a libel of information filed by the United States against the schooner Javirena (Severo Gonzales, claimant) for violation of the customs laws. In the district court a decree was entered condemning the vessel, in the sum of $400, for violating the provisions of Rev. St. § 2773. The claimant appealed.

E. R. Gunby, for appellant.

Frank Clarke, for the United States.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PARDEE, Circuit Judge. In July, 1894, the small Spanish schooner Javirena, ordinarily known as a fishing smack, sailed from Havana, in the island of Cuba, bound for no foreign port, but with a clearance to permit her to fish in Spanish waters and in the open seas. She was without cargo, and carried on board only the stores and fishing appliances supposed to be necessary for a fishing trip of two or three weeks. On the 24th of July, 1894, she was found at anchor by the United States revenue cutter McLane in the open waters off the coast of Florida, about 5 or 6 miles from the mainland, and 2¾ miles from North Anclote Key, which is an uninhabited sand key about four miles off the main coast of Florida, near to the Anclote Key, another sand key, on which is a lighthouse, and to the eastward of which is an anchorage. Upon the approach of the revenue cutter the Javirena got under way, apparently to go further out to sea, or on her regular fishing business. The commanding officer of the revenue cutter seized the Javirena, and carried her 80 miles, to the port of Tampa, and there turned her over to the collector of that port for violations of sections 2773–2775, 2811 of the Revised Statutes of the United States, all of which are found in that chapter of the Revised Statutes relating to the "Entry of Merchandise." At the time the Javirena was seized, she had on board about two-thirds of a full cargo of fish, lately caught, and among her stores 20 to 30 gallons of wine, and about as much more of aguadiente. There was no charge made against the Javirena for smuggling, or even for communicating or attempting to communicate with the mainland for any purpose whatever. The collector of the port of Tampa imposed fines on the Javirena, in the total sum of $1,900, for violation of sections 2773–2775, Id., and announced to the master of the vessel that the vessel was also reported for violation of section 2811, Id., which requires the master of any vessel laden with merchandise, and bound to any port of the United States, to deliver manifest when boarded within four leagues of the coast, and also the first and second sections of the act of congress approved February 15, 1893, in not having the health certificate required thereby. The fines not being paid, an information was filed in the district court for the Southern district of Florida against the Javirena, to recover the amount of said fines, alleging them to have been imposed on the master, and to be due from him, under the sections 2773–2775, aforesaid, and alleging that the Javirena had arrived within the limits of the collection district of Tampa, Fla., and had attempted to depart from said collection district without entry made with the collector of the port of said district. When the evidence was produced in the district court, it was found that the Javirena was not arrested within the limits of the collection district of Tampa, but in limits of the collection district of St. Marks; and thereupon it appears that the libel was amended, without objection, so as to charge the Javirena with having arrived within the limits of the collection district of

St. Marks, and with having attempted to depart therefrom without entry made with the collector thereof.

The master of the Javirena testified that at the time and place of seizure his vessel had been at anchor about eight hours; that the cause of his anchoring was that he had some damages on the schooner to be repaired, one of the stays or shrouds of the foremast having been broken; and that he could not make his repairs without coming to anchor; and this evidence does not appear to have been disputed. The court found that the master of the schooner Javirena had not violated sections 2774, 2775, Rev. St. U. S., because the Javirena had not arrived at any port of the United States, and had not violated the act of 1893, because she had not attempted to enter any port, but had violated section 2773, because she had arrived within the limits of a collection district of the United States, and had attempted to depart therefrom without making entry, and thereupon condemned the Javirena and her claimant in the sum of $400, together with costs, expenses, and charges, to be taxed. From this decree an appeal is prosecuted in this court, with errors assigned as follows:

"(1) That the court erred in finding from the evidence that the defendant vessel was subject to a lien for the violation by the master of section 2773, Rev. St. U. S. (2) That the court erred in permitting the information to be amended so as to show that a fine had been incurred by the vessel after the case had been tried on an information charging that a fine had been imposed on the master."

Section 2773, Rev. St. U. S., is as follows:

"If any vessel, having arrived within the limits of any collection-district, from any foreign port, departs, or attempts to depart from the same, unless to proceed on her way to some more interior district to which she may be bound, before report or entry shall have been made by the master with the collector of some district, the master shall be liable to a penalty of four hundred dollars; and any collector, naval officer, surveyor, or commander of any revenue-cutter may cause such vessel to be arrested and brought back to the most convenient port of the United States. If, however, it is made to appear by the oath of the master, and of the person next in command, or by other sufficient proof to the satisfaction of the collector of the district within which such vessel shall afterward come, or to the satisfaction of the court in which the prosecution for such penalty may be had, that the departure or attempt to depart was occasioned by stress of weather, pursuit or duress of enemies, or other necessity, the penalty imposed by this section shall not be incurred."

Under the facts of this case, it is by no means clear that the Javirena arrived within the limits of the collection district of St. Marks, within the meaning and purview of this section. It may be conceded that the territorial and jurisdictional limits of the district of St. Marks extended beyond and included the place where the Javirena anchored; but if the evidence of the master is considered, in connection with the conceded facts, the Javirena did not arrive within the limits of the said collection district for any purpose of business with the mainland, nor as one of the termini of her voyage. Under other sections of the Revised Statutes, where duties in

regard to entry and register are required of vessels arriving in districts or ports, the arrival has generally been construed to mean something more than a putting into port from stress of weather or circumstances. In U. S. v. Shackford, 5 Mason, 445, Fed. Cas. No. 16,262, affirming the same case in 1 Ware, 177, Fed. Cas. No. 16,263, Justice Story held that, "to affect the master of a vessel with the penalty provided for his nondelivery of a temporary register granted under the third section of the coasting act of 1793, there must not only be an arrival at the port to which the vessel belongs, but it must be an arrival there, not by accident or from necessity, but intentionally, as one of the termini of the voyage." See, also, Harrison v. Vose, 9 How. 372; Toler v. White, 1 Ware, 277, Fed. Cas. No. 14,079. In Parsons v. Hunter, 2 Sumn. 419, Fed. Cas. No. 10,778, Mr. Justice Story, in citing with approval U. S. v. Shackford, supra, holds that under section 2 of the act of 1803, requiring the master of a United States ship, on its arrival at a foreign port, to deposit his register, sea letter, and Mediterranean passport, that the term "arrival" means arrival at a voluntary port of destination, for the purposes of trade. See, also, Treasury Regulations 1892, art. 48.

Under these decisions, can it be said that the Javirena, in coming to anchor within five miles of the mainland of Florida, in what was apparently otherwise the open sea, at a place 85 miles from the port of entry of the district, and for the purpose of repairing a disabled mast, and not for any purposes of trade or business, arrived within the limits of the collection district of St. Marks, so as to require an entry at the customhouse of said district before continuing her voyage? Section 2773, supra, is substantially the same as section 29 of the act of congress entitled "An act to regulate the collection of duties on imports and tonnage," approved March 2, 1799. 1 Stat. 627–648. This section was before the supreme court of the United States in The Apollon, 9 Wheat. 362. That case was a suit for damages occasioned by an asserted illegal seizure of the French ship Apollon and cargo, and the construction of the twenty-ninth section of the act of 1799 was directly before the court. After discussing its bearing upon the case in hand, the court says:

"The true exposition of the twenty-ninth section is that it means to compel an entry of all vessels coming into our waters, being bound to our ports; and the very exception of vessels bound to some interior district demonstrates the sense of the legislature, by indicating the entire stress laid upon the destination of the vessel."

The Apollon has been cited many times with approval by the supreme court, on other points than the one here in question; but, in respect to the construction of the twenty-ninth section, it has never been questioned or doubted. It appears to control this case. Laying aside all question as to whether the Javirena arrived within the actual territorial limits of the collection district of St. Marks, and whether she was there for the mere temporary purpose of repair, it is clear that as the Javirena was not a vessel bound for

any port of the United States, and as she had not entered any port of the United States, under a proper construction of section 2773, she was not bound to make an entry at any customhouse before attempting to depart from the place where she was anchored. The decree of the district court is reversed, and the cause is remanded, with instructions to dismiss the libel of information.