UNITED STATES v. EIGHTY-FIVE HEAD OF CATTLE.

(District Court, D. Montana. May 24, 1913.)

No. 107.

CUSTOMS DUTIES (§ 130*)—ANIMALS—"IMPORTATION."

Act June 10, 1890, c. 407, § 9, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), as amended by Act Cong. Aug. 5, 1909, c. 6, § 28, 36 Stat. 97 (U. S. Comp. St. Supp. 1911, p. 904), provides that if any owner, importer, consignee, agent, or other person shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice, practice, or appliance, or shall be guilty of any willful act or omission whereby the United States shall be deprived of lawful duties or any portion thereof. such merchandise shall be forfeited, etc. *Held*, that such section only authorizes forfeiture of property "imported into the United States," "importation" meaning that property of a foreign situs is brought into the United States by the owner or with his consent, with intent that it be here used, consumed, or enjoyed, or incorporated in the general mass of property; and hence where the owners of cattle, resident in the Dominion of Canada near the national boundary, negligently permitted them to graze at large and to stray across the line into the United States, but without any intent to permit them to remain, there was no importation, or willful act, or omission, intended to deprive the cattle of their foreign situs, nor the United States of duties thereon, and hence the cattle were not subject to forfeiture.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296–315; Dec. Dig. § 130.*

For other definitions, see Words and Phrases, vol. 4, pp. 3438, 3439.]

Libel by the United States against Eighty-Five Head of Cattle, alleged to have been fraudulently imported into the United States. Judgment for claimants.

James W. Freeman, U. S. Dist. Atty., of Helena, Mont.
H. S. Kline, of Havre, Mont., for claimants.

BOURQUIN, District Judge. Libel of information for forfeiture of cattle alleged to have been fraudulently and knowingly imported into the United States from the Dominion of Canada, in that the importation was clandestine and secret, without entry at the custom house or payment of duties, and with intent to defraud the United States of lawful revenue. Answer, general denials. Trial by the court.

It appears the cattle involved are owned by four settlers of the Dominion adjacent to the international boundary between it and Montana. The line is only partially fenced. The owners permitted the cattle to graze at large in the Dominion, in the course of which they occasionally strayed across the line and into Montana. This happened several times, and on notice from the United States custom officer the owners drove the cattle back into the Dominion.

About two weeks to one month before seizure the cattle, to the knowledge of the owners, were grazing at large in the Dominion about three miles north of the line. The owners did not see them again until after the seizure. About the time of the seizure the cattle were found grazing about two miles south of the line, and a settler in Montana, in the vicinity of whose haystacks they were, to protect said stacks, drove said cattle about four miles further south, where they were later seized.

At the time of the seizure the owners did not know the cattle had crossed the line, did not desire and had no intent that they should cross or remain any time south of the line, though they knew the cattle were liable to cross the line. There was no entry of the cattle at the custom house, no payment of duties, and no intent to defraud the United States of any revenue.

It would seem these owners did no more than is the custom on both sides of the boundary—lawfully permit cattle to graze at large, involving occasional straying from either side of the line to the other. The entry of these cattle into the United States was more or less accidental, was unintentional, and not inevitable, and was against the will of the owners. This, though they knew such entry might and was liable to occur, and did not do all possible to prevent.

Having right to graze at large in the Dominion, the fact that to the knowledge of the owners the cattle were liable to and occasionally did stray across the line would not convert their acts in such grazing into culpable negligence, depriving such unintended and not inevitable straying of all accidental quality, and characterizing it as importation. It may be likened to the mariner who puts to sea, water or air, with knowledge that lack of some or sufficient device or appliance, or waves or winds, or some accident or mistake, may and on occasion does cast vessels upon foreign shores. By some or all such causes, in which there is generally some degree of negligence, his vessel is so cast. If

timely removed, it and its cargo are not imported into the country where cast away, are subject to no duties there, and liable to no forfeiture.

The property upon which duties are leviable, and which is forfeitable for failure to enter at the custom house, is property "imported" into the United States. To be "imported," it must be of foreign situs, and brought hither by the owner, or with his consent, with intent to be here held, used, consumed, or enjoyed, or to be here incorporated in the general mass of property. If brought hither by accident, great, if not inevitable, necessity, superior force, or by a trespasser, and timely removed hence, it is not "imported," nor dutiable, nor subject to forfeiture against the owner. See The Concord, 9 Cranch, 387, 3 L. Ed. 768; Merrit v. One Case of Wool (C. C.) 32 Fed. 111; The Javirena, 67 Fed. 155, 14 C. C. A. 350; U. S. v. 1150 Lbs. Celluloid, 82 Fed. 627, 27 C. C. A. 231.

The act of the owners of the cattle involved in grazing them at large in the Dominion was not a "willful act or omission," within the meaning of section 9, Act June 10, 1890, c. 407, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), as amended by Act Aug. 5, 1909, c. 6, § 28, 36 Stat. 97 (U. S. Comp. St. Supp. 1911, p. 904), in that the evil intent involved in "willful," as used in this and like penal statutes, was wholly absent. The libel, however, seems to invoke the provisions of section 2865, R. S. (U. S. Comp. St. 1901, p. 1905), and the charge is not sustained by the proof. For these reasons it would seem the cattle involved were not imported, not dutiable, not forfeited. And it is so held.

It may be observed that in the main this best comports with the situation involved. Pioneers along the boundary are generally of small means. Subduing the land to civilization involves great labor and hardship at best. Their success is of public concern. The governments are generous to them. To restrict their grazing privileges in their own land by forfeitures for mere straying into the other land would greatly handicap them. So far, neither government seems to have done so. If done by one (at least before a plain statute commands it), comity fails, harmony is disturbed, and retorsion is inevitable. To stray is the nature of cattle. This government recognizes that it will occur across international boundaries, and permits cattle so straying from this country to be returned free of duty. Act Aug. 5, 1909, c. 6, § 1, par. 492, 36 Stat. 11 (U. S. Comp. St. Supp. 1911, p. 811). The reason must be that such straying does not deprive the cattle of their situs here, and their return is not importation. True, such straying may afford opportunity to the owner to defraud the revenue, in that he may, if the strays escape notice, secretly sell or merge them in property here—in effect "import" them without paying duty. This danger, however, cannot affect the construction of the law. Vigilance or new legislation may guard against it.

The circumstances warranted suspicion, and furnished reasonable cause for the seizure here involved. The officers acted thereon in good faith. A certificate thereof will be entered.

Judgment for claimants.