(C. D. 180)

East Asiatic Co., Inc. *v.* United States

United States Customs Court, Third Division

(Decided June 15, 1939)

*Lawrence & Tuttle* (*Charles F. Lawrence* and *George R. Tuttle* of counsel) for the plaintiff.

· *Charles D. Lawrence,* Acting Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

Before Cline, Evans, and Keefe, Judges; Evans, J., concurring

Cline, Judge: This is a suit against the United States, arising at the port of Los Angeles, in which the plaintiff claims that the collector of customs erred in assessing additional duty at the rate of 10 per centum ad valorem under section 304 (b) of the Tariff Act of 1930 on the ground that the merchandise was not legally marked at the time of importation.

It appears from the record that the goods herein involved consisted of copra meal shipped from Mexico and that, when the shipment was landed, the bags containing the meal did not bear any marks indicating the country of origin of their contents.

The plaintiff contends that the additional duty should not have been assessed because when the shipment arrived the merchandise was destined for transshipment to Copenhagen, Denmark, and was not intended for consumption in the United States; that on account

of the longshoremen's strike in Los Angeles and other Pacific coast ports it was impossible immediately to reload the goods for shipment to Copenhagen; that in order to get the merchandise off the dock the owner changed his mind concerning the entry and decided to enter the goods for consumption in the United States; that before making the entry for consumption the bags were marked with the name of the country of origin of the meal; that as the importer did not intend, at the time of arrival, to enter the goods for consumption in the United States, the entry for transportation should not be considered as an importation; and that, since the goods were legally marked before they were entered for consumption, the shipment should be considered as properly marked at the time of importation.

The plaintiff called as a witness Mr. James A. Sullivan of the steamship department of Balfour Guthrie & Co., Ltd., agents of the steamship department of the East Asiatic Co., the owner of the goods. He testified that the copra meal arrived on the ship *Panama* and was discharged at Los Angeles on October 21, 1936; that the goods were destined for transshipment to Copenhagen, Denmark; that he received instructions from East Asiatic Co. to discharge the merchandise and retain it on the dock for later transshipment to Copenhagen on the vessel *India;* that following the arrival of the copra meal he was unable to export it because of a longshoremen's strike which prevented him from so doing; that the vessel *India* for which the cargo was originally intended was delayed in San Francisco; that the longshoremen's strike started approximately on October 31, 1936, and continued until somewhere between February 15 and March 1, 1937; that it was impossible to ship any merchandise by water out of the port of Los Angeles during that time; and that the meal remained on the dock until it was finally entered for consumption.

The next witness called by plaintiff was Mr. Giles E. Stevens, a customhouse broker, who testified that the firm with which he was connected was the agent for East Asiatic Co.; that, acting under instructions from East Asiatic Co., he made an export entry of the merchandise on October 21, 1936, for exportation on the motorship *India;* that on December 7, 1936, he received information from the owner of the goods that the shipment was not marked with the name of the country of origin and requesting that he get permission from the collector to have the merchandise weighed and marked; that he made such request to the collector, which request was granted; that the marking was done by Kopen Brothers of Wilmington before December 12, 1936; that on account of a longshoremen's strike it was impossible to export merchandise during the months of October, November, and December 1936; and that he made a consumption entry thereof on December 12, 1936. On cross-examination he testi-

fied that the collector's office did not request that the merchandise be marked but that he asked the collector for permission to mark it and that it was marked while it was still in bond.

Mr. Milo M. Mullen, the United States appraiser at Los Angeles, was called by the plaintiff and testified that copra meal or copra cake meal is a crude substance.

The following exhibits were produced by plaintiff's witnesses and received in evidence:

*Exhibit 1.* A copy of the manifest of the motorship *Panama* showing that the shipment was taken on board at Mazatland, Mexico, for transshipment to Copenhagen by the motorship *India*.

*Exhibit 2.* A letter from East Asiatic Co., Inc., to Balfour, Guthrie & Co., Ltd., advising that the motorship *Panama* contained 400 tons of copra meal in bags for transshipment to the motorship *India*.

*Exhibit 3.* A copy of transportation entry 427, filed October 29, 1936, covering 6,700 bags of copra meal, imported in the "Dan. m/s Panama" to be transported to Copenhagen, Denmark, via "Dan. m/s India."

*Exhibit 4.* A letter dated December 8, 1936 (attached to the invoice), from W. J. Byrnes & Co., customs brokers, addressed to the collector of customs at Los Angeles, requesting permission to weigh and mark 6,700 bags of copra meal "Ex MS Panama," entered under export entry 427, at the Outer Harbor Dock & Wharf Co. dock.

Counsel for defendant, in his brief, challenges the testimony of plaintiff's witness to the effect that the bags containing the copra meal were marked before the entry for consumption was filed and maintains that the official marking notice on customs Form 4647 establishes that the goods were not marked on December 12, 1936, because the notice is dated January 12, 1937, and the affidavit of Giles E. Stevens thereon, advising that the marking thereon was done in accordance with the specific requirements, was executed on January 20, 1937. In the case of *R. C. Williams & Co., Inc.* v. *United States*, 26 C. C. P. A. 210, C. A. D. 19, the appellate court held that this court erred in considering statements made on such marking notices when such notices were not specifically offered and received in evidence. The marking notice in this case was not offered or received in evidence. Therefore such notices can not be considered as having any evidential value.

The statute herein involved reads:

[SEC. 304] (b) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at *the time of importation* any article or its container is not marked, stamped, branded, or labeled in accordance with the requirements of this section, there shall be levied, collected, and paid on such article, unless exported under customs supervision, a duty of 10 per centum of the value of such article, in addition to any other duty imposed by law, or, if such article is free of duty, there shall be levied, collected, and paid a duty of 10 per centum of the value thereof. [Italics ours.]

The question for decision is whether the copra meal was marked at *"the time of importation"* into the United States, in accordance with the provisions of section 304 (a) of the Tariff Act of 1930. It is admitted that the bags containing the meal were not marked when the goods were entered for transshipment and landed on the dock, but it appears from the record that they were properly marked at the time the merchandise was entered for consumption.

The plaintiff argues in his brief that, where merchandise is landed merely for transshipment, such landing is not an importation, citing *United States* v. *United Cigar Stores*, 1 Ct. Cust. Appls. 450, T. D. 31505; *McLean* v. *Hager*, 31 Fed. 602; *Hermann* v. *United States*, T. D. 22447; *United States* v. *Luyties*, 130 Fed. 333; *Millar* v. *Millar*, 17 Fed. Cas. 289; *Gant* v. *Peaslee*, 9 Fed. Cas. 1143. The cases cited relate to merchandise having a through bill of lading to the United States but landed in a foreign port for the purpose of transshipment to the United States. The courts held that such shipments should be considered as exportations from the country from which they were first shipped and not from the country where they were landed for transshipment. Those decisions are not applicable to the question herein involved.

Plaintiff cites also a line of cases where merchandise has been shipped from the United States to another country for the purpose of extending the time limit of warehouse bonds, or taken abroad by fraud or inadvertence, namely, *American Mica Co.* v. *United States*, T. D. 31143; *Indianapolis Co.* v. *United States*, T. D. 39343; *Newman & Gach* v. *United States*, Abstract 38787, 22 Treas. Dec. 1031; *Flagler* v. *Kidd*, 78 Fed. 341; *Snow* v. *United States*, T. D. 46772; and *Eastman* v. *United States*, T. D. 40309. In the cases cited the court held that the merchandise was never exported from the United States. Those decisions have no bearing on the issue involved in this case because they relate to the intent at the time of exportation and circumstances surrounding the shipment of goods to foreign ports.

The main contention of the plaintiff is that the copra meal in this case was not imported until the goods were entered for consumption and that until the performance of that act there was no importation of the goods into the United States, citing *May Co.* v. *United States*, 12 Ct. Cust. Appls. 266, T. D. 40270; *United States* v. *Boshell*, 14 Ct. Cust. Appls. 273, T. D. 41884; *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 406, T. D. 42052; *Loblaw Groceterias, Inc.* v. *United States*, 22 C. C. P. A. 479, T. D. 47481; *United States* v. *85 Head of Cattle*, 205 Fed. 679, T. D. 33739; and *McLean* v. *Hager*, 31 Fed. 602.

In *United States* v. *Boshell*, *supra*, the court, after reviewing the leading cases on the subject, held that "importation" means the

bringing of merchandise within the limits of a port of entry with intention there to unlade. The court said:

The common ordinary meaning of the word "import" is to bring in. Imported merchandise is merchandise that has been brought within the limits of a port of entry from a foreign country with intention to unlade, and the word "importation" as used in tariff statutes, unless otherwise limited, means merchandise to which that condition or status has attached.

The decisions in *United States* v. *Field & Co.* and *Loblaw Groceterias, Inc.* v. *United States, supra,* contain practically the same definition. It is manifest that under the rule announced in those decisions, the "time of importation" of the copra meal therein involved was the time the vessel containing the merchandise crossed the customs border because at that time the importers intended to unlade the goods on the dock at Los Angeles.

In *May Co.* v. *United States, supra,* the court distinguished between "importation" and "imports." The court said:

The words "import" and "importation" may be used with entirely different meanings. In general, "import" means "to bring in" (Webster's New International Dictionary, 1910), and the words were given such meaning in the very recent case of *Cunard Steamship Co.* v. *Mellon* (262 U. S. 100), in which it was held at page 122 that:

Importation, in a like sense, consists of bringing an article into a country from the outside. If there be an actual bringing in it is importation regardless of the mode in which it is effected. Entry through a custom house is not of the essence of the act.

This reasoning was used in connection with liquor which was brought into the port of New York on foreign vessels, but not entered for customs duty. When Congress uses the words "import" and "importation" in a tariff act, it of course refers to the bringing in of goods under customs control. Also the word "import" sometimes is applied in tariff decisions to goods which were never entered, and which never became a part of our commerce, but which were under the control of customs officials. "Imports" is also very properly held to be only such goods as actually are released from customs custody into the commerce of the country. The circumstances of this case lead us to the irresistible conviction that where the word "imported" is used in sections 301, 302, and 303 of the Act of 1921 it has a broader meaning than merely a "bringing in," and that it was meant to refer to the completed act, which was after the goods had been released from the customs control.

In that case the court held that goods brought into the United States and placed in bonded warehouse prior to the time the Emergency Act of 1920 was enacted, but which remained in bonded warehouse until after the enactment of that act, were within the meaning of the words "imported merchandise" contained in the particular sections of the emergency act therein under consideration and were subject to the methods of appraisement provided for in that act.

In the cases of *McLean* v. *Hager* and *United States* v. *85 Head of Cattle, supra,* it was held that merchandise was not "imported," within the meaning of the statutes therein involved, unless there

was an intent to bring the goods into the United States for consumption or sale. In the *McLean* v. *Hager* case, *supra*, the merchandise was not landed at the request of the importer. It was destined for transshipment to Panama, the goods to be transferred from one ship to another in the harbor at San Francisco on a through bill of lading to Panama. The collector seized the merchandise while on board the inward-bound ship while in the harbor at San Francisco, on the theory that the ship was a bonded warehouse, and would not permit the transfer of the goods to the ship sailing for Panama without the payment of the customs duties. The court held that the merchandise was not "deposited in a bonded warehouse" within the meaning of that term in the statute and therefore not subject to the provisions of the law. In the case of *United States* v. *85 Head of Cattle, supra*, the cattle strayed across the Canadian border without the knowledge of the owner and were seized by the customs officers.

A different statute is involved in the case now before the court. Section 304 specifies "*if at the time of importation* any article or its container is not marked" and, as to that statute, the courts have adopted the view that the law relates to the condition of the goods the first time they were landed and that even though they were shipped abroad from bonded warehouse to be remarked or were marked in warehouse before they were entered for consumption, they were subject to the marking duty, citing *American Aniline Products, Inc.* v. *United States*, Abstract 34964, 70 Treas. Dec. 1146; *H. P. Lambert Co.* v. *United States*, T. D. 48595; *Kee Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 105, T. D. 40943.

The case of *Kee Co. et al.* v. *United States, supra*, related to merchandise which was imported and placed in bonded warehouse prior to the enactment of the Tariff Act of 1922. The goods covered by protest 7016–G in that decision were entered under bond in April 1922 and were not marked so as to show the country of origin at that time. In May 1922 the goods were legally marked in accordance with the marking requirements of the Tariff Act of 1913 while in customs custody but they remained in warehouse until after the Tariff Act of 1922 was enacted on September 21, 1922, and were thereafter entered for consumption. The court held that, since they were not legally marked when they entered the jurisdiction of the United States, they were subject to the marking duty under section 304 of the act of 1922, although the marking placed on them in warehouse before they were entered for consumption was sufficient to indicate the name of the country of origin. The court said:

The merchandise being subject to the duties of the Tariff Act of 1922, is subject to the additional duty of 10 per centum of its appraised value, provided by section 304 (a), *supra*, because, at the time it was brought into the United States with intention to unlade, it was not legally marked. The fact that it was marked

while in bonded warehouse and before the Tariff Act of 1922 became operative, does not in any way affect the legal status of the merchandise except to permit its entry into the commerce of the country. Its condition at the time it was brought into the United States with intention to unlade determines its classification under the provisions of section 304 (a), *supra*.

We find that the copra meal in the case herein involved was not legally marked "at the time of importation," that is, at the time the vessel containing the goods entered the jurisdiction of the United States with intent to unlade, and hold that the collector properly assessed the marking duty under section 304 (b) of the Tariff Act of 1930. The protest is overruled. Judgment will be entered in favor of the defendant.

### CONCURRING OPINION

EVANS, Judge: I concur in the foregoing opinion and desire to advance additional reasons in support of the holding herein, to wit. Congress has provided but one exception whereby merchandise imported not legally marked may escape the payment of the additional duty. Section 304 (b) of the Tariff Act of 1930 provides as follows:

(b) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at the time of importation any article or its container is not marked, stamped, branded, or labeled in accordance with the requirements of this section, there shall be levied, collected, and paid on such article, *unless exported under customs supervision*, a duty of 10 per centum of the value of such article, in addition to any other duty imposed by law, or, if such article is free of duty, there shall be levied, collected, and paid a duty of 10 per centum of the value thereof. [Italics supplied.]

The evidence establishes that the containers of this merchandise fall within the class of goods required under said section 304 to be marked. The only escape from the marking duty lies in the provision enacted in section 304 (b) through exportation. We cannot introduce equitable grounds of relief not recognized by the statute based upon the fact that the importer intended to export the commodity. The fact remains that he did not export the same and therefore the duty accrues.