SHELDON & Co. *v.* UNITED STATES (No. 1593).[1]

1. RETROACTIVE LEGISLATION.

A legislative purpose to give retroactive effect to a law imposing a burden based upon an act or admission not when committed subject to a penalty will not be imputed to Congress except upon a clear expression of such intention. (Citing I. Cooley on Taxation, 494, 495.) Whether such legislation would be within the constitutional inhibition of ex post facto legislation, *quere.* (Citing Burgess *v.* Salmon, 97 U. S., 381.)

2. CONSTRUCTION—STATUTE NOT RETROACTIVE.

Antimony was entered under the law of 1909, which made it dutiable specifically; and withdrawn under the law of 1913, which makes it dutiable ad valorem. Its appraised exceeded its declared value. The law of 1913 will not be given a retroactive effect, so as to make it subject to the additional duty imposed by paragraph I of section 3, upon merchandise dutiable ad valorem when the appraised exceeds the declared value.

United States Court of Customs Appeals, January 28, 1916.

APPEAL from Board of United States General Appraisers, Abstract 38226.

[Reversed.]

*Walter Evans Hampton* for appellants.

*Bert Hanson,* Assistant Attorney General (*John R. Rafter,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The material facts in the case are that the appellants imported certain antimony metal which was entered for warehouse during the life of the tariff act of 1909. That act, by paragraph 173, provided a specific duty for antimony at the rate of 1½ cents per pound. Upon the making of the warehouse entry, the merchandise was appraised by the local appraiser at a value 20 per cent higher than the value declared in the entry. The importers were notified of the advance, but no appeal to reappraisement was taken. Thereafter, and prior to the passage of the present act, the entry was liquidated at the specific rate provided, without additional duty, the permit of delivery was issued, and the merchandise was withdrawn from warehouse after the present act became effective. The collector thereupon reliquidated the entry, assessing duty at the rate of 10 per cent ad valorem under paragraph 144 of the act, and an additional duty based upon paragraph I of section 3, because the appraised value exceeded the entered value. The importers protested against the assessment of additional duty, and upon a hearing before the Board of General Appraisers the assessment of duty by the collector was affirmed.

It will be seen that the question presented is one of law, that is, whether or not this additional duty was properly assessed on merchandise imported and entered for warehouse under the act of 1909 when subject to a specific rate of duty, but which was not withdrawn

for consumption until the act of 1913, imposing an ad valorem rate of duty, became effective, such merchandise having been appraised at the time of entry for warehouse at a value in excess of the entered value.

The act in force at the time this entry was made, subsection 7 of section 28 of the act of 1909, provides:

\* \* \* If the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry there shall be levied, collected, and paid, in addition to the duties *imposed by law* on such merchandise, an *additional duty* of one per centum of the total appraised value thereof for each one per centum that such appraised value exceeds the value declared in the entry: *Provided,* That the additional duties shall only apply to the particular article or articles in each invoice that are so undervalued and shall not be imposed upon any article upon which the amount of duty imposed by law on account of the appraised value does not exceed the amount of duty that would be imposed if the appraised value did not exceed the entered value.

In this case no fraud is averred or suggested, and indeed it would be difficult to conceive how an undervaluation upon entry of specific goods could under this act have worked a fraud. Assuming the act to have contemplated an appraisal of specific goods, which is not an unreasonable construction of the act, the question of the duty resting upon the importer with reference thereto becomes one of first importance. It is of course made his duty at the time of entry to state the value of the goods as he conceives it to be. This he did, and no fraud is suggested, as before stated. Thereupon an appraisement is had by the appraiser, and the value stated in the entry is advanced. Notice of this is brought home to the importer, and no appeal to reappraisement is had. But the question suggests itself, why should he appeal to reappraisement? Not only is the value of the goods not in terms made the basis for assessment, but in the express language of the act the additional duty which is imposed in certain cases is not to be imposed where, as in this case, the advance in value by appraisement does not add to the duties imposed. It would be idle for him to take an appeal to reappraisement. He has done all that the statute requires in entering the goods at the value as he conceived it to be.

It is hardly to be conceived that the provision for this additional duty was intended to have relation to future enactments. The law was complete in itself and it must be assumed that when this so-called additional duty which, while declared not to be a penalty, resulted in a very large increase in the duties imposed, was provided, the provision had relation to the neglect of a duty by the importer at the time of the entry, and that to justify the imposition of the additional duty there must have been dereliction or act of the importer which affected at the time the amount of duty which the Government was entitled to exact.

That the effect of subsection 7 above quoted was to provide an imposition for the *act* of undervaluation is clear.    In the case of Helwig *v.* United States (188 U. S., 605), the question presented was whether, under section 7 of the act of 1890, to which subsection 7 of section 28 of the act of 1909 is successive, the additional sum imposed was a penalty.    It was said *inter alia:*

Without other reference than to the language of the statute itself, we should conclude that the sum imposed therein was a penalty. It is not imposed upon the importation of all goods, but only upon the importer in certain cases which are stated in the statute, and it is clear that the sum is not imposed for any purpose of revenue, but is in addition to the duties imposed upon the particular article imported, and in each individual case when the sum is imposed it is based upon the particular act of the importer. That particular act is his undervaluation of the goods imported, and it is without doubt a punishment upon the importer on account of it.  *  *  *.

Although the statute, under section 7, *supra,* terms the money demanded as "a further sum," and does not describe it as a penalty, still the use of those words does not change the nature and character of the enactment.  Congress may enact that such a provision shall not be considered as a penalty or in the nature of one, with reference to the further action of the officers of the Government, or with reference to its effect upon the individual, and it is the duty of the court to be governed by such statutory direction, but the intrinsic nature of the provision remains, and, in the absence of any declaration by Congress affecting the manner in which the provision shall be treated, courts must decide the matter in accordance with their views of the nature of the act.

So, under the present law the imposition, whether it be called a tax or additional duty, and even though it may not be called or construed to be a penalty, is nevertheless based upon an act of the importer and is not an imposition based upon the value, character, or status of the merchandise imported.

Whether a law retrospectively imposing a so-called duty upon such an act previously concluded is subject to impeachment as an ex post facto law, in contravention of the Constitution, it is not necessary to decide.    But as to this question, see Burgess *v.* Salmon (97 U. S., 381).    Assuming such legislation to be wholly within the competence of Congress, an act which is claimed to work such results is certainly subject to the rule established by abundant authority, that legislation of this character, or even legislation claimed to impose a tax in the most proper or most commonly accepted meaning of that term, is not to be held to act retrospectively unless the intent to give it that effect is clearly expressed.    (1 Cooley on Taxation, 494–5, and cases cited in note 1 on page 495.)

The present asserted imposition is not *a priori* a tax.    It can only be made such by the legislative declaration that it is to be so-called, and the purpose to relate such provision to a preexisting state of facts based upon a concluded act is not to be imputed to Congress in the absence of the clearest declaration of such intention.    We do not find such purpose thus clearly expressed in the act of 1913.    If

that purpose is manifested anywhere, it is in paragraph Q of subsection 2 of section 4, which in part reads as follows:

That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the *duties imposed by this act,* and to no other duty, upon the entry or the withdrawal thereof.

What is meant by the term " duty imposed by this act?" It is contended by the importers that it means the rate of duty imposed by the statute. The counsel for Government contends that it means all the duties imposed by the act, including the additional duties claimed in this case. When the terms of the act of 1909 and 1913 are construed together, the contention of the Government can not be sustained. The assurance that the additional duties shall not be imposed upon any article upon which the amount of duty imposed by law on account of the appraised value does not exceed the amount of duty that would be imposed if the appraised value did not exceed the entered value appearing in the act of 1909 had reference to the act of undervaluation as it affected the duitable status of the importation at that time, and the *law* referred to is most obviously the law in force when the entry was made. When the whole transaction relating to the entry and advance on appraisement was closed, the importer was by express declaration of the law declared not to be subject to any additional duty. Not only is this true, but the policy of the act of 1909 is continued in the present act, for in the act of 1913 the same assurance is given by paragraph I of section 3, which reenacts the proviso above quoted. This proviso appearing in the act of 1913 is to be construed in connection with the other terms of the act imposing the duty of making entry thereunder and has relation to the act of entry and restricts the provision for added duty by making it applicable to the case of an entry where the undervaluation and subsequent increase resulted in increasing the amount of duty to which the goods were subjected by *law.* This clearly imports the law in force when such undervaluation occurs and the transaction is concluded by the appraisement.

We are not called upon to decide whether additional duties actually accrued under the act of 1909 fall within the provision of paragraph Q of subsection 2 of section 4 of the act of 1913. That is not this case. This was an attempt to impose a so-called duty charge upon the importers for an act not provided for by the act of 1909 and likewise not subject to such imposition under the act of 1913, but for an act concluded prior to its enactment. This we think was not intended by paragraph Q.

The decision of the Board of General Appraisers sustaining the contention of the Government is *reversed.*