### KEE CO. ET AL. *v.* UNITED STATES (No. 2503) [1]

1. CONSTRUCTION, SECTION 304 (a), TARIFF ACT OF 1922—ADDITIONAL DUTY NOT PENAL—MARKING.

The additional duty prescribed by section 304 (a), Tariff Act of 1922, for merchandise not marked with the name of the country of its origin is not penal.

2. CONFLICT OF LAWS—MARKING.

Merchandise shipped before the Tariff Act of 1922 became effective, but imported after, was subject to the additional duty imposed by section 304 (a) of the act upon merchandise not marked with the name of the country of its origin. Section 1, Tariff Act of 1922.

3. IMPORTATION—IMPORTED—SECTION 304 (a), TARIFF ACT OF 1922.

In its ordinary statutory sense the word importation means bringing merchandise into this country from the outside with intention to unlade; and the word imported, in section 304 (a), Tariff Act of 1922, means merchandise to which that condition or status has attached.

4. ENTRY—WHEN COMPLETE.

An entry is not complete until the payment of the estimated duties. Section 490, Tariff Act of 1922. Where duties were not paid until after the going into effect of the act of 1922, the entry was under that act, and not the one of 1913.

5. CONFLICT OF LAWS—MARKING.

Merchandise was imported and entry tendered the collector before the institution of the Tariff Act of 1922, but duties were paid and delivery permit issued after. At the time the Tariff Act of 1922 went into effect the entry was incomplete, according to section 490 thereof, and subject, according to section 319 thereof, to the duties imposed by the act. The additional duty provided for merchandise not marked with the name of the country of its origin by section 304 (a) was incurred.

---

[1] T. D. 40943.

6. CONSENT JUDGMENTS.

Ordinarily, when counsel for all the parties to an appeal enter into a stipulation and formally present it to this court for reversal or affirmance of a judgment of the trial court, such stipulation is accepted by this court. However, in this case, no stipulation having been made but appellee having formally consented to a reversal, the facts and the law having been fully presented, the court having reached a legal conclusion contrary to the views expressed by counsel for both parties, is constrained to enter judgment in accordance with its views.

7. CONFLICT OF LAWS—MARKING.

Merchandise was entered in bond before, and withdrawn after, the Tariff Act of 1922 became effective. It was marked with the name of the country of its origin while in customs custody and before the act of 1922 became effective. Its condition at the time it was imported governed its dutiable status, and, in accordance with section 319 of the act of 1922, it was subject to the additional duty of section 304 (a) for not being marked.

United States Court of Customs Appeals, May 25, 1925

APPEAL from Board of United States General Appraisers, G. A. 8737 (T. D. 39993)

[Affirmed.]

*Allan R. Brown* for appellants.
*William W. Hoppin,* Assistant Attorney General (*Oscar Igstaedter* and *Marcus Higginbotham,* special attorneys, of counsel), for the United States.

[Oral argument April 20, 1925, by Mr. Brown and Mr. Igstaedter]

Before GRAHAM Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Board of General Appraisers in protests 969505, Wing Woh Chong Lung Kee Co., 977946, Gaetano Garra, and 7016–G, Massce & Co., and involves construction of section 304 (a) of the Tariff Act of 1922, which reads as follows:

SEC. 304 (a). That every article imported into the United States, which is capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production, shall be marked, stamped, branded, or labeled in legible English words in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. Any such article held in customs custody shall not be delivered until so marked, stamped, branded, or labeled, and until every such article of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled, shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury may prescribe. Unless the article is exported under customs supervision, there shall be levied, collected, and paid upon every such article which at the *time* of *importation* is not so marked, stamped, branded, or labeled, in addition to the regular duty imposed by law on such article, a duty of 10 per centum of the appraised value

thereof, or if such article is free of duty there shall be levied, collected, and paid upon such article a duty of 10 per centum of the appraised value thereof.

Every package containing any imported article, or articles, shall be marked, stamped, branded, or labeled, in legible English words, so as to indicate clearly the country of origin. Any such package held in customs custody shall not be delivered unless so marked, stamped, branded, or labeled, and until every package of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled shall be marked, stamped, branded, or labeled in accordance with such rules and regulations as the Secretary of the Treasury may prescribe.

The Secretary of the Treasury shall prescribe the necessary rules and regulations to carry out the foregoing provisions. (Italics ours.)

In protest No. 969505, the merchandise was shipped prior to the enactment of the Tariff Act of 1922, but did not arrive in this country until after the act of 1922 had become operative. It is not contended that the merchandise was legally marked. The collector classified the importation as not legally marked, required each article contained therein to be marked under customs supervision and assessed an additional duty of 10 per centum of the value thereof. The Board of General Appraisers sustained the action of the collector.

The protest of Gaetano Garra, No. 977946, was submitted to the Board of General Appraisers on the following stipulation:

It is hereby stipulated and agreed by and between the parties hereto that the date of the arrival of the vessel in which the merchandise was imported was June 12, 1922; that the entry was presented to the collector July 31, 1922; that the duties were not paid nor delivery permit issued until December 11, 1922; that the protest may be submitted upon this stipulation and all the papers in the case.

The collector classified the merchandise in this importation as not legally marked and it appears from the record in the case that the merchandise was marked while in customs custody and under customs supervision after the act of 1922 became effective.

In protest No. 7016–G, of Massce & Co., it appears that the merchandise was entered in bond in April, 1922. It was not legally marked at that time. In May, 1922, the merchandise was legally marked while in customs custody. It remained in bonded warehouse, duties unpaid, until after the Tariff Act of 1922 went into effect. It was entered for consumption under the act of 1922. The collector assessed the merchandise with an additional duty of 10 per centum of its appraised value because it was not legally marked at the time it arrived in this country.

The Board of General Appraisers overruled each of the protests in this case and in each instance affirmed the decision of the collector.

It should be noted that Section IV, paragraph F, subsection 1 of the act of 1913, required that merchandise should be marked in order to indicate the country of origin, but it did not provide for an additional duty in the event that the statute was not complied with.

It is contended by the appellants that the provisions of section 304 (a), supra, are not applicable to imported merchandise which was shipped prior to the time such section became effective because it was not intended that such section should have retrospective operation; that the provision for an additional duty is a penal provision; that the offense for which the penalty is imposed is the failure to mark the merchandise *before* importation, and, as it could not be marked while in transit, the offense was committed when it was shipped, and, therefore, before the act providing the penalty for the offense was passed; that if it was the intent of Congress that such additional duty should be applicable to merchandise which was shipped without being legally marked prior to passage of the act of 1922, the provision would be void because in its operation it would increase the punishment for an offense committed prior to the enactment of the law, and hence would be an *ex post facto* law and unconstitutional; that in any event the additional duty is not applicable to merchandise which arrived in this country prior to the passage of the act of 1922.

In support of the latter contention the following cases are cited: *Sterling Bronze Co.* v. *United States,* 12 Ct. Cust. Appls. 338, T. D. 40487; *Sheldon & Co.* v. *United States,* 6 Ct. Cust. Appls. 516.

In protest No. 969505 the merchandise was imported under the Tariff Act of 1922, although it was shipped while the act of 1913 was in operation.

Section 1 of the Tariff Act of 1922 reads as follows:

SEC. 1. That on and after the day following the passage of this act, except as otherwise specially provided for in this act, there shall be levied, collected, and paid upon all articles when *imported* from any foreign country into the United States or into any of its possessions (except the Philippine Islands, the Virgin Islands, and the islands of Guam and Tutuila) the *rates* of duty which are prescribed by the schedules and paragraphs of the dutiable list of this title, namely: (Italics ours.)

The merchandise having been imported into the United States under the act of 1922, it was subject to the rates of duty prescribed by that act.

In the case of *Bradford Co. et al.* v. *American Lithographic Co.,* 12 Ct. Cust. Appls. 318, T. D. 40318, this court held that the additional duty provided for in section 304 (a), supra, was "an ad valorem rate or unit amount of duty, based entirely upon the character or condition of the merchandise;" that the assessment of such additional duty depended upon classification of the merchandise, and that such additional duty was not to be regarded as penal in its nature.

The additional duty not being penal in its nature and Congress having plainly provided that such duty should be assessed upon all merchandise not marked in the manner provided by law which

was imported into the United States "on and after the day following the passage of" the Tariff Act of 1922, it was incumbent upon the collector to assess the merchandise with an additional duty of 10 per centum of its appraised value.·

In protest No. 977946, of Gaetano Garra, it was stipulated by the parties that the merchandise was imported on June 12, 1922, and that the entry was presented to the collector on July 31, 1922. The Tariff Act of 1922 was not enacted by Congress until September, 1922; therefore the merchandise represented by this protest was imported under the tariff act of 1913. But it should be noted that "the duties were not paid nor delivery permit issued until December 11, 1922," and that on that date the tariff act of 1913 had been repealed and the Tariff Act of 1922 was in full force and effect. This brings us to a consideration of section 319 of the act of 1922, which reads as follows:

SEC. 319. That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued shall be subjected to the duties imposed by this act and to no other duty upon the entry or the withdrawal thereof: *Provided*, That when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall be levied and collected upon the weight of such merchandise at the time of its entry.

It has been repeatedly held by this court that, in its "ordinary statutory sense, the word 'importation' means bringing merchandise into this country from the outside with intention to unlade, and that 'imported' in like manner, when applied thereto, means merchandise to which that condition or status has attached. * * *" There is another line of cases that clearly recognizes that Congress may declare, by statute designed to operate retrospectively, that merchandise which has been previously imported but is still in customs custody at the time a given enactment becomes operative shall be subjected to the duties imposed by the subsequent statute, and whenever the subsequent statute clearly shows such intent on the part of Congress full effect will be given thereto." *Diana et al.* v. *United States*, 12 Ct. Cust. Appls. 290, T. D. 40295.

·In the case of *Sterling Bronze Co.* v. *United States*, 12 Ct. Cust. Appls. 338, T. D. 40487, cited by appellants, this court in considering section 304 (a), supra, held: "In the case at bar we are agreed that there is no doubt that Congress used the words 'imported' and 'importation' in the statute under review in their ordinary sense." In that case it appeared that the merchandise was imported after the passage of the act of 1922. The contention of the appellant was that the merchandise was not imported until it had been legally marked and a delivery permit issued therefor.

We have no reason to doubt the correctness of our conclusion in that case. We are of the opinion that merchandise which is capable of being marked must be legally marked at the time of its arrival in this country with intent to unlade. Section 304 (a), supra, should, however, be read and the language thereof interpreted in connection with section 319, supra, and when so read and interpreted it is at once manifest that Congress intended that merchandise, the entry of which had not been completed under the act of 1913, the duties on which had not been paid, and for which no permit of delivery had been issued at the time of the passage of the act of 1922, should be subjected to the duties imposed by the latter act. *United States* v. *Cronkhite Co.*, 9 Ct. Cust. Appls. 129, and cases therein cited; section 2926 of the Revised Statutes and section 490 of the Tariff Act of 1922.

Section 2926 of the Revised Statutes, which was in force and effect until repealed by section 642 of the Tariff Act of 1922, provided as follows:

SEC. 2926. All merchandise, of which *incomplete entry has been made*, or an entry without the specification of particulars, either for want of the original invoice, or for any other cause, or which has received damage during the voyage, shall be conveyed to some warehouse or storehouse, to be designated by the collector, in the parcels or packages containing the same, there to remain with due and reasonable care, at the expense and risk of the owner or consignee, under the care of some proper officer, until the particulars, cost, or value, as the case may require, shall have been ascertained either by the exhibition of the original invoice thereof, or by appraisement, at the option of the owner, importer, or consignee; *and until the duties thereon shall have been paid, or secured to be paid*, and a permit granted by the collector for the delivery thereof. (Italics ours.)

Section 490 of the Tariff Act of 1922 reads as follows:

SEC. 490. INCOMPLETE ENTRY.—Whenever entry of any imported merchandise is not made within the time provided by law or the regulations prescribed by the Secretary of the Treasury, or whenever entry of such merchandise is *incomplete because of failure to pay the estimated duties*, or whenever, in the opinion of the collector, entry of such merchandise can not be made for want of proper documents or other cause, or whenever the collector believes that any merchandise is not correctly and legally invoiced, he shall take the merchandise into his custody and send it to a bonded warehouse or public store, to be held at the risk and expense of the consignee until entry is made or *completed* and the proper documents are produced, or a bond given for their production. (Italics ours.)

It is admitted that the duties were not paid until December 11, 1922, at which time the Tariff Act of 1922 was in full force and effect.

The merchandise was entered for consumption. The estimated duties were not paid at the time the entry was presented, and until such duties were paid the entry was incomplete. The entry not being completed while the tariff act of 1913 remained in effect, no legal entry was made under that act.

The merchandise having been imported into the United States, with intent to unlade, prior to the passage of the Tariff Act of 1922, and

no legal entry having been made until after that act became operative, we are of the opinion that the provision of section 319, supra, "merchandise previously imported, for which no entry has been made, * * * shall be subjected to the duties imposed by this act and to no other duty upon the entry or the withdrawal thereof" applies to this case, and that the merchandise was subject to the duties of the Tariff Act of 1922, including the additional duty of 10 per centum provided by section 304 (a), supra.

With reference to the appeal from the judgment of the trial court in protest No. 7016–G, the Government in its brief says:

We respectfully submit that under the facts in this protest (7016–G) *and the law applicable thereto* there should be an order of reversal of the board's decision in so far as it affects this particular protest. (Italics ours.)

Ordinarily, when counsel for all the parties to an appeal enter into a stipulation, which was not done in this case, and formally present it to this court for reversal or affirmance of a judgment of the trial court, such stipulation is accepted by this court and judgment of reversal or affirmance, as the case may be, is accordingly entered.

However, in the case now before us, the facts and the law applicable thereto having been fully presented, the court having reached a conclusion as to the law of the case which is at variance with the views expressed by counsel for both parties to the appeal, it is constrained to enter judgment in accordance with its views.

The merchandise was not legally marked at the time it was brought into the United States. It was entered in bond and remained in bonded warehouse until after the Tariff Act of 1922 was passed and became effective. It was then entered for consumption.

It is evident that such merchandise was subject to the duties of the act of 1922, on account of the provisions contained in section 319, supra, "* * * all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued shall be subjected to the duties imposed by this act and to no other duty upon the entry or the withdrawal thereof: * * *."

The merchandise being subject to the duties of the Tariff Act of 1922, is subject to the additional duty of 10 per centum of its appraised value, provided by section 304 (a), supra, because, at the time it was brought into the United States with intention to unlade, it was not legally marked. The fact that it was marked while in bonded warehouse and before the Tariff Act of 1922 became operative, does not in any way affect the legal status of the merchandise except to permit its entry into the commerce of the country. Its condition at the time it was brought into the United States with intention to unlade

determines its classification under the provisions of section 304 (a), supra.

For the reasons stated the judgment of the Board of General Appraisers is in all respects *affirmed*.