STONE & DOWNER CO., JOHN A. CONKEY & CO., AND J. A. KARNHEIM *v.* UNITED STATES (No. 3409)[1]

---

[1] T. D. 45388.

260

# United States Court of Customs and Patent Appeals, December 17, 1931

*Sharretts & Hillis, Joseph F. Lockett,* and *William E. Waterhouse (Edward P. Sharretts* of counsel) for appellants.

*Charles D. Lawrence,* Assistant Attorney General *(Thomas J. McKenna,* special attorney, of counsel), for the United States.

[Oral argument October 15, 1931, by Mr. Sharretts and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The material facts in this case are fully set out in a stipulation filed by counsel, in the court below, which stipulation is as follows:

It is stipulated and agreed, between the parties hereto, as follows:

(1) That the merchandise covered by the above protests consists of wool imported at the port of Boston, entered and deposited in United States bonded warehouse on the dates specified in column D of the annexed schedule, and was held for the duties in said bonded warehouse until after the enactment of the Tariff Act of 1922.

(2) That all of said wool was imported and deposited in said bonded warehouse after the enactment of and during the life of the Tariff Act of 1913 and the Emergency Tariff Act of 1921.

(3) That the entries were liquidated by the collector of customs on the dates specified in column E of the annexed schedule and the wool classified and assessed for duty at the rate of 30 cents per pound under paragraph 18 of the Emergency Tariff Act.

(4) That protests were duly filed by the importers in accordance with the requirements of the Customs Administrative Act, under the numbers specified in column F of the annexed schedule.

(5) That said protests claimed that the wool in question was not subject to the provisions of paragraph 18 of the Emergency Tariff Act but was entitled to free entry under paragraph 650 of the Tariff Act of 1913.

(6) That on February 20, 1923, the Board of United States General Appraisers entered a judgment overruling the said protests; that a copy of said judgment attached hereto and marked Exhibit 1 shall be received in evidence.

(7) That on March 15, 1923, a petition for review was filed with the Court of Customs Appeals from the judgment of the Board of General Appraisers; that said proceeding became suit 2245 in the United States Court of Customs Appeals.

(8) That on February 9, 1924, the United States Court of Customs Appeals entered final judgment reversing the judgment of the Board of United States General Appraisers with respect to all the wool covered by the present entries excepting such wool as was represented by Exhibit 13 (bale No. 3118), and holding said wool to be free of duty under paragraph 650 of the Tariff Act of 1913; that a certified copy of the final judgment of the Court of Customs Appeals, attached hereto and marked Exhibit 2, shall be received in evidence; that the opinion of the Court is reported in *Stone & Downer et al.* v. *United States,* 12 Ct. Cust. Appls. 62.

(9) That the said final judgment of the Court of Customs Appeals of February 9, 1924, was rendered with respect to the wool covered by the present entries.

(10) That said final judgment of the Court of Customs Appeals has never been reversed nor modified.

(11) That on February 20, 1924, the final mandate of the Court of Customs Appeals, consisting of a certified copy of the order of the court of the 9th day of February, 1924, was issued to the Board of United States General Appraisers.

(12) That on March 10, 1924, the Board of United States General Appraisers, pursuant to the judgment of the Court of Customs Appeals, issued its mandate to the collector of customs at the port of Boston directing him to reliquidate the entries here in question and to classify all the wool excepting that represented by Exhibit 13 (bale No. 3118), free of duty in accordance with the final judgment of the Court of Customs Appeals; that the certified copy of the mandate of the Board of General Appraisers, attached hereto and marked Exhibit 3, shall be received in evidence.

(13) That said mandate of the Board of General Appraisers of March 10, 1924, has never been reversed nor modified.

(14) That thereafter on the dates specified in column G of the annexed schedule the collector of customs at the port of Boston, in obedience to the mandate of the Board of General Appraisers of March 10, 1924, and in accordance with the judgment of the Court of Customs Appeals of February 9, 1924, reliquidated the entries here in question excepting entry 1660 covered by protest 109889–G/13313 and classified the wool covered thereby as free of duty under paragraph 650 of the Tariff Act of 1913.

(15) That entry 1660 covered by protest 109889–G/13313 was never reliquidated as directed by the judgment and mandate of the court, namely, as free of duty under paragraph 650 of the Tariff Act of 1913.

(16) That thereafter on the dates specified in column H of the annexed schedule the collector of customs at the port of Boston again liquidated the entries here in question, including entry 1660, covered by protest 109889–G/13313 and reclassified the same wool at the rate of 31 cents per pound on the clean content, under paragraph 1102 of the Tariff Act of 1922; that the action of the collector was in accordance with instructions from the Assistant Secretary of the Treasury; that a copy of said instructions attached hereto and marked Exhibit 4 shall be received in evidence.

(17) That the importers were required to pay the duties prescribed in paragraph 1102 of the act of 1922 in order to obtain possession of their merchandise.

(18) That the schedule annexed hereto and marked "X" shall be part of this stipulation.

(19) That the present case shall be submitted upon this stipulation and exhibits referred to therein and upon the entry papers, invoices, and reports of the appraiser and collector and other papers forwarded by the collector.

Upon this stipulation the United States Customs Court, First Division, Brown, J., dissenting, overruled the several protests and sustained the classification made by the collector. Appellants have brought the case here, assigning many errors, but relying, principally, upon the contention that the goods are free of duty under our holding in *United States* v. *Stone & Downer Co. et al.*, 12 Ct. Cust. Appls. 557, T. D. 40784. The contention is that said judgment was never reversed or modified, and is valid; that the goods, being free under said judgment, were not subject to the action of section 319 of the

Tariff Act of 1922; that said goods were never legally in bonded warehouse, under the following provision of the statute, section 2962, Revised Statutes:

Any merchandise subject to duty * * '* may be entered for warehousing and be deposited in a bonded warehouse. * * *

Hence, it is argued, said goods not being legally in bonded warehouse, it follows that they could not be subjected to duties under the Tariff Act of 1922, as goods in such bonded warehouse.

The various entries were made herein, as stated in the stipulation of facts, under the Tariff Act of October 3, 1913, and the Emergency Tariff Act of May 27, 1921. An inspection of these entries shows them to be the ordinary warehouse entries, the entrant in each case describing the goods therein as dutiable goods, stating their dutiable values, and giving other details required by the law at the time they were so entered. There is no indication of any kind, so far as the papers are concerned, that there was ever any compulsion or duress exerted upon the importers at the time these entries were made, or at any time thereafter.

After the goods were entered, they were classified and assessed for duty by the collector, bond was taken, and the goods were sent to bonded warehouse. Thereafter, and within the legal period, the importers protested the collector's action, claiming the goods to be free of duty under paragraph 650 of the said Tariff Act of October 3, 1913.

From that time until they were withdrawn for consumption, the goods remained in the bonded warehouse without any further action on the part of the importers. Meanwhile the Tariff Act of 1922 had become effective. During the period from the time of the filing of the protests to the effective date of the Tariff Act of 1922, the importers could, at any time, have withdrawn the goods for consumption, by the payment of the estimated duties thereon. Article 266, Customs Regulations of 1915. In such case, if the importers were finally successful in their protest claims for free entry of the goods, the duties collected would have been refunded, as provided by the said regulation. Neither does the record show that any demand was made upon the collector for the withdrawal of the goods without the payment of duties prior to the enactment of the Tariff Act of 1922.

This court, in *Stone & Downer et al.* v. *United States*, 12 Ct. Cust. Appls. 62, T. D. 40019, held the goods to be free of duty under said paragraph 650 of the Tariff Act of October 3, 1913. That judgment was never reversed or modified but remains, to this day, a valid judgment of a court having full and complete jurisdiction. That judgment was, in effect, that under the relevant provisions of the said tariff acts of 1913 and 1921, the goods were free of duty.

It follows, as a matter of logical sequence, that if the importers, at any time prior to the effective date of the Tariff Act of 1922, had withdrawn their goods from bonded warehouse, as they had a right to do, they might have continued to litigate their protests, and upon the succeeding judgment of this court declaring them free of duty, would have had a refund of the duties paid. This, however, they chose not to do, but permitted their goods to remain in warehouse until the new Tariff Act of 1922 and its various provisions became effective.

Section 319 of the Tariff Act of 1922 is as follows:

SEC. 319. That on and after the day when this Act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this Act and to no other duty upon the entry or the withdrawal thereof: *Provided*, That when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall be levied and collected upon the weight of such merchandise at the time of its entry.

On October 6, 1924, the collector reliquidated the goods in question as free of duty under the Tariff Act of October 3, 1913, in pursuance of the final mandate of this court, as conveyed to him by the mandate of the Board of General Appraisers. Immediately thereafter, acting on orders from the Secretary of the Treasury, and in claimed compliance with the provisions of said section 319, the collector reliquidated the entries and classified the same for duty under paragraph 1102 of the Tariff Act of 1922. It is this action of the collector which is in issue here. That question has never been passed upon by this court. Our judgment in *Stone & Downer et al.* v. *United States, supra,* dealt entirely with the dutiability of said goods under the act of October 3, 1913. The question of their dutiability under section 319 and paragraph 1102 of the Tariff Act of 1922 are before us now for the first time.

No principle is better settled in this court than the one that goods in bonded warehouses are not to be considered as imported until a permit of delivery has been issued and they enter into the commerce of the country. A mere citation of but a few of the authorities will suffice: *Casazza & Bro.* v. *United States,* 13 Ct. Cust. Appls. 627, T. D. 41481; *Hartranft* v. *Oliver,* 125 U. S. 525; *Five Per Cent Cases,* 6 Ct. Cust. Appls. 291, T. D. 35508, and cases therein cited.

This being the view of the courts, it seems to follow, logically, that goods legally in bonded warehouse at the time of the effective date of a subsequent tariff act, are subject to the duties imposed by the new act, at the time the withdrawal for consumption occurs, unless otherwise specified by the law. Reference to a few of these authorities will be had.

In *Hartranft* v. *Oliver, supra,* the Supreme Court had under consideration certain goods which arrived in the port of Philadelphia on June 30, 1883, and were not entered until July 7, thereafter. The effective date of the Tariff Act of March 3, 1883, was July 1, 1883. The goods were classified for duty under said act of 1883, and the duties duly collected. Action was brought against the collector by the importer to recover the claimed excess duties. The said act of 1883 contained section 10 (22 Stat. 488, 525), the provisions of which are, in substance, the same as section 319 of the Tariff Act of 1922.

The Supreme Court held the goods dutiable under said section 10 of said act of 1883, saying, in part:

The plain meaning of this section is, that, though goods are imported before the act takes effect, yet if they are kept until after that period in a public store or bonded warehouse, that is, in the custody and under the control of officers of the customs, they shall be subjected only to the duties thereafter leviable when they are entered for consumption. If previously to such entry duties have been paid on goods imported before the act took effect, which are afterwards kept in a public store or bonded warehouse, that is, in the custody and control of officers of the government, the importer is entitled to a refund of the difference between the amount paid and the amount which would be leviable if they were imported after the act took effect. In other words, goods imported before the act took effect, if kept in the custody and control of the government, are to be charged with duties according to the law in force when they are entered for consumption; that is, when passed over to the control of the importer or owner. The place in which the goods are thus kept is not the essential fact, but the custody of the government, and the consequent exclusion of control over them by the owner, which calls for the suspension of previous duties. There is manifest justice in the rule that goods thus withheld from the control of the owner or importer shall be subject only to such duties as are leviable by the law when he is at liberty to take possession of them.

\*　　\*　　\*　　\*　　\*　　\*　　\*

We are, therefore, of opinion that, within the spirit and intent of the 10th section of the act of March 3, 1883, the goods were not chargeable with duties, whilst on board the bark, in custody of an officer of the customs, at any greater rate than they would have been chargeable if in custody of such officer in a public store or bonded warehouse of the government; and that therefore duties were only leviable on the goods by the act which went into effect on the first of July, 1883. The intent of the legislature is to be followed, even if not strictly within the letter of the statute.

The Circuit Court of the Southern District of New York had a similar question before it in *DePass* v. *Bidwell,* 124 Fed. 615. In that case goods were brought from Porto Rico after the cession of that island to the United States, and placed in bonded warehouse, where they remained until after the effective date of the Foraker Act. Act of April 12, 1900, c. 191, 31 Stat. 77. That act provided that goods in bonded warehouse when the act took effect should pay duties as provided therein. Duties were imposed thereunder upon the goods in

question, and such imposition was sustained by the court. The court said, in part:

If importation has not ceased while goods remain in the custody of the custom officers, so that the owner may avail himself of a change in the law reducing duties, while they so remain it is difficult to understand why it should not be held that importation is not so far ended but that goods, in this situation, become subject to an increase of duty, or to the imposition by law of duties, when none whatever were imposed at the date of entry. The plaintiffs had no vested right to exemption from duty so long as the goods remained in government warehouse under bond. While the goods remained there, the plaintiffs assumed the risks of the imposition of duties by the law-making power of the government.

*Gump Co.* v. *United States*, 3 Ct. Cust. Appls. 137, T. D. 32384, is a case in point. In that case goods were entered for warehousing prior to the enactment of the Tariff Act of August 5, 1909, and remained there until after that act became effective. Under paragraph 717 of the said act the goods were free of duty if certain regulations of the Secretary of the Treasury were complied with, although the law, at the time they were entered for warehousing, made them dutiable. Section 29 of said act of 1909 was, in substance, the same as section 319 of the Tariff Act of 1922. Free entry was denied by this court for the reason that the Treasury regulations had not been complied with, but the plain inference is to be drawn from the language used in the opinion that if such regulation had been complied with, the goods would have been entitled to free entry. The court said, in part:

At the time the merchandise here involved was brought into this country it was dutiable under the law then in force. Section 29 of the act of 1909, however, provided in substance that on the date when the act took effect all merchandise previously imported for which no entry had been made, or previously entered without payment of duty and under bond for warehousing for which no permit of delivery had been issued, should be subject to the duties provided for in the act; while paragraph 717 provided that the merchandise here, although it would have been dutiable at the time it was imported if entered for consumption, nevertheless, by reason of the fact that it was entered under bond for warehousing and no permit of delivery issued therefor, might take the benefit of the new tariff law, provided such regulations as to proof of antiquity as the Secretary of the Treasury might prescribe were complied with.

\*  \*  \*  \*  \*  \*  \*

Although in fact brought into this country under the prior law no duty had been paid on the merchandise because advantage had been taken of the provisions of the law which made it possible to defer such payment until it was entered for consumption—in other words, until it became a part of the merchandise of the country—so that the entire act of importing goods for consumption was still incomplete and the completion thereof required a withdrawal from the warehouse and such proceedings as would admit them to consumption here.

In *United States* v. *Cronkhite Co.*, 9 Ct. Cust. Appls. 129, T. D. 37980, goods came into the country on July 17, 1916, were shipped in bond, and entered September 8, 1916, as free of duty. The collector classified the goods for duty under the provisions of the act of

September 8, 1916, 39 Stat. 756. The court commented upon the effect of paragraph Q of Section IV of the Tariff Act of October 3, 1913, the predecessor paragraph of section 319 of the Tariff Act of 1922, and held the goods dutiable under the act in force when the goods were entered for consumption. In commenting upon the various cases on the subject, De Vries, J., speaking for the court, said:

* * * In these various decisions the doctrine was uniformly adhered to that so long as goods remained in the custody and control of the officers of the customs they are to be regarded as in customs custody so as to be affected by any new legislation in relation to the duties that Congress may see fit to adopt. What constituted such withdrawal from the custody of the customs and introduction into the body of commerce was held to require payment of duties and the due delivery and receipt by an importer of an unconditional permit of delivery.

The legal effect of said paragraph Q was again involved in *May Co.* v. *United States*, 12 Ct. Cust. Appls. 266, T. D. 40270, in which the opinion of the majority of the court was delivered by Bland, J., Smith and Barber, JJ., dissenting. There goods were brought into the country on May 23, 1921, entered for transportation in bond, and entered for consumption on June 1, 1921, after the effective date of the Emergency Tariff Act of May 27, 1921. This court held that the provisions of the last named act applied.

Again, we said in *Casazza & Bro.* v. *United States, supra:*

For all dutiable purposes, therefore, it is plain Congress intended goods remaining in bonded warehouse after September 21, 1922, with duties unpaid thereon, to be subject to the provisions of the Tariff Act of 1922. We have, in such cases, held on many occasions, that the time of importation must be deemed to be the time of withdrawal for consumption and that, to this extent at least, the rights and remedies of the parties must be determined by the provisions of the new law. *May Co.* v. *United States*, 12 Ct. Cust. Appls. 266; *Diana* v. *United States*, 12 Ct. Cust. Appls. 290; *Kee Co.* v. *United States*, 13 Ct. Cust. Appls. 105, T. D. 40943.

To the same effect is *United States* v. *Estate of Boshell*, 14 Ct. Cust. Appls. 273, T. D. 41884.

It would appear, therefore, from considering this line of uniform decisions, that immediately upon the Tariff Act of 1922 becoming effective, goods in bonded warehouses for which no permits of delivery had been issued were subject to the rates and provisions of the new act, unless some reason to the contrary is shown.

The sole contention in support of appellants' position is that the goods in question here were free goods and were, therefore, illegally in bonded warehouse, and that, therefore, said section 319 can not apply to them. In that connection, reference is had to section 2962, Revised Statutes, providing that "merchandise subject to duty" may be entered for warehousing and to article 240, Customs Regulations of 1915, which provided: "* * * free goods * * * can not be entered for warehouse."

As we view the matter, the appellants are hardly in position to avail themselves of any such defense, even if it had merit. They caused their goods to be entered for warehousing as dutiable goods. They were so classified by the collector. Certainly, in such instance, and until it was finally determined that they were free goods, they were entitled to the warehouse privilege. Otherwise, no goods could ever be admitted to bonded warehouse where it was questionable whether they were dutiable or free.

Section 641, aforesaid, is relied upon. That section provides as follows:

SEC. 641. * * * The repeal of existing laws or modifications thereof embraced in this act shall not affect any act done, nor any right accruing or accrued, nor any suit or proceeding had or commenced in any civil or criminal case prior to said repeal or modifications, but all liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modifications had not been made.

It will be observed that this section provides, in substance, for a continuance of "any right accruing or accrued," before the effective date of the Tariff Act of 1922. But what right had accrued or was accruing to the appellants? They had not imported their goods prior to the effective date of the Tariff Act of 1922. They were, therefore, in no better position than they would have been if their goods had been upon the high seas, outside the customs jurisdiction of the country, when the Tariff Act of 1922 became effective.

We would further observe that, even though appellants' contention that the goods in question were illegally in warehouse at the time of the enactment of the Tariff Act of 1922 was correct, nevertheless the judgment of the lower court must be affirmed for the reason that if the goods were not, by reason of being free, entitled to the warehouse privilege, it must follow that the warehouse entries made by appellants were void for that reason.

At all times during the year 1922 there were in force the Customs Regulations of 1915, promulgated by the Secretary of the Treasury pursuant to law. Article 215 of said regulations provided that "Entry must be made of all importations, whether free or dutiable and regardless of value." Article 216 designated the kinds of entry that could be made for imported merchandise; among them are consumption entries, provided for in article 235, and warehouse entries, provided for in article 239. The only entries that were made by appellants in the case at bar were warehouse entries, and if these are void, there have been no valid entries of the merchandise here in question. Said section 319 of the Tariff Act of 1922 expressly provides for such cases and requires that where no entry has been made for merchandise previously imported, such merchandise shall be subject to the duties imposed by said Tariff Act of 1922. Therefore,

the protests of appellants should be overruled, irrespective of the question of whether the goods involved were legally in warehouse at the time of the passage of the Tariff Act of 1922.

The court below was in error in holding that the subsequent judgment of the Supreme Court in *United States* v. *Stone & Downer Co.*, 274 U. S. 225, "nullified" the judgment of this court rendered in *Stone & Downer* v. *United States, supra.* The said judgment of this court was not affected by the judgment of the Supreme Court. However, upon the enactment of the Tariff Act of 1922, the goods became subject to a duty fixed by the new act, and the questions pending before the courts as to the dutiability of said goods under the provisions of the said tariff acts of 1913 and 1921 became moot. We have no doubt, had this point then been presented to this court, that the court would have so held.

While differing with the court below in its reasoning, we are of opinion no error was committed in sustaining the classification of the wool in question for duty under the relevant provisions of the Tariff Act of 1922. The judgment, therefore, ought to be, and is, *affirmed.*

### DISSENTING OPINION

BLAND and GARRETT, JJ.: We must respectfully but vigorously dissent from the conclusion and reasoning in the majority opinion, and in doing so we think we should call attention to the error of the lower court in order that we may more clearly present our views in connection with those of the majority.

The lower court states that the contention of the importers would be proper "if the wool in question had been finally determined to be entitled to free entry." Agreeable to this statement we are of the opinion that this was the correct test. Later in the decision, however, the trial court states, as a reason why the goods in question were not free of duty at the time of entry, that the second judgment of this court in *United States* v. *Stone & Downer et al.*, 12 Ct. Cust. Appls. 557, T. D. 40784 (which did not involve the merchandise at bar), was a nullity and that, therefore, the Supreme Court of the United States, having held the merchandise in the latter case dutiable, the merchandise in the former case was, therefore, dutiable. The majority of this court, as we understand it, disagree with both statements. We disagree only with the last one.

We think the question should be approached from a different angle. It must be conceded that were it not for the provisions of section 319 of the Tariff Act of 1922, there would be no contention here that the Government could collect any duty on the wool involved in the first *Stone & Downer Co.* case before this court, irrespective of any holding of the Supreme Court reversing the judgment of this court in the second *Stone & Downer Co.* case.

It is conceded on every hand that section 319 of the Tariff Act of 1922 only applies to dutiable goods, and that the warehousing privilege therein provided for was not intended for free merchandise. The following query is immediately presented: In an instance where the Government claims merchandise to be dutiable and will not permit the importer to make entry and take the same without payment of duty, can the importer make a warehouse entry of the same pending litigation of his claim for a free of duty status and later obtain possession of it under a court judgment holding it to be free, if he permits the merchandise to remain in bonded warehouse until after the passage of a new act containing provisions such as are in section 319, *supra*?

The above query may be divided into two questions: First, Can the importer make a warehouse entry under a statutory provision which is intended for dutiable goods and later be heard to contend that they are free? Second, If he can do so, and a new act is passed while the goods are in warehouse, are the goods in the warehouse under such circumstances as will permit the application of section 319 in event he wins in his contention that the goods are free?

The pertinent warehousing statute, in force and effect when the merchandise involved was imported and warehoused, is section 2962 of the Revised Statutes. The portion of the same which is important to this case reads:

Any merchandise subject to duty * * * may be entered for warehousing and be deposited in a bonded warehouse * * *.

Article 240 of the Customs Regulations of 1915 provided "free goods * * * can not be entered for warehouse."

We do not believe that Congress by the phrase "merchandise subject to duty" intended to deny the warehouse privilege provided for to merchandise which the Government claimed to be dutiable and the importer claimed to be free, and which was, on account of this contention, to become the subject matter of litigation between the parties. The fact that the importer warehoused his goods rather than pay the duty on the same, when he was contending that they were free of duty, is in no wise to be regarded as a binding admission of the character of the goods. The inference of the majority appears to be to the contrary.

It is our opinion that to the first part of the query the answer should be that goods which have a status such as those at bar may be legally warehoused and that such warehousing does not, of itself, remove such goods from a free status and make them dutiable.

In answer to the second question, we must conclude that it logically follows from what we have already said that if goods which are in fact free of duty are in the warehouse under such circumstances as are at bar, section 319, *supra*, would not apply to them. In other words,

if the goods are free goods, section 319 does not make them dutiable, and the mere fact that they are in the warehouse when the new act is passed does not change their status as free goods.

The majority opinion states that the appellants contend here that the goods were not subject to the provisions of section 319 for the reason that appellants' goods were illegally in the bonded warehouse. After previously having referred to the appellants' contention, the majority opinion says:

We would further observe that, even though appellants' contention that the goods in question were illegally in warehouse at the time of the enactment of the Tariff Act of 1922 was correct, nevertheless the judgment of the lower court must be affirmed for the reason that if the goods were not, by reason of being free, entitled to the warehouse privilege, it must follow that the warehouse entries made by appellants were void for that reason.

We find no contention made by appellants in this case to the effect that the goods were illegally in the bonded warehouse in the sense that they had no right to be there. Appellants do contend that their goods were "illegally held" by the collector. By reason of this contention of appellants the above quoted statement on the part of the majority does not seem to us to be a fair statement of the case, because it amounts to saying that the appellants' entry was void. We do not think it is the intention of the majority to hold that the appellants did not have the right to enter their goods for warehousing even if they were in fact free goods, if the collector refused to let them have them until duty was paid or the issue was adjudicated. The warehouse entry certainly would not be invalidated because appellants claimed the goods were free. *As we understand the position of appellants, it is that the goods were legally entered and placed in bonded warehouse, but being free goods (and this court said they were free), the collector illegally withheld them from the appellants for payment of duty, and that, therefore, they were not to be regarded as dutiable goods which were the only kind of goods that are subject to the provisions of section 319.*

We think the contention of appellants above referred to was correct and that their goods were legally entered and legally in the warehouse for the purposes for which they were placed in the warehouse. They were not in the warehouse when the new act came into existence because appellants wished them to remain there but because the collector forcibly held them unless the duty was paid, which duty, as we have said heretofore, appellants did not have to pay until the matter was adjudicated.

The authorities cited by the majority have reference to dutiable goods remaining in warehouse under conditions totally dissimilar to those at bar. Furthermore, none of the decisions cited in the majority opinion involved cases wherein it was necessary to consider the legal effect of a judgment of a court.

It seems to us that the decisions in *Bidwell* v. *Levi*, 147 Fed. 225, and *DePass* v. *Bidwell*, 124 Fed. 615, are much more in point. While the last two above-cited cases may be in other respects distinguishable, the reasoning on the exact question at bar would seem to be very persuasive. In the latter case, speaking of free goods imported from Porto Rico and held in bonded warehouse by the collector, the court said:

> If, however, these sugars were voluntarily placed in bond by the importer, and a duty was imposed thereon under the Dingley Tariff Act, and they were held for the payment of such duties until the Foraker act took effect, such holding and detention were illegal * * *.

Now, it seems to us that the first thing to do is to determine whether the goods were free or dutiable at the time they were in warehouse after the passage of the Tariff Act of 1922. If they were free when they were entered, they were free all the time they were in the warehouse, since section 319, *supra*, could not affect their status. The court below has held that they never were free goods because the Supreme Court of the United States in a similar later case held the goods in the similar case to be dutiable. (The majority properly holds that this was erroneous.) This court held the exact goods in this case to be free of duty at the time of importation. These were not the same goods as the goods which were before the Supreme Court, and its judgment in the latter case has no bearing whatever on the free or dutiable status of the merchandise at bar.

The Supreme Court has pointed out where this court was in error in its later decision. The reasoning and effect of the Supreme Court decision, although upon a different record with some different facts, we think points to the fact that this court erred in its conclusions in the first decision and that the goods in the first case should have been held dutiable. Notwithstanding the fact that our first judgment, in the light of the Supreme Court's decision, was unquestionably wrong, it was not void. It remained a judgment in full force and effect and was a complete and final adjudication of the dutiable status of the merchandise therein involved.

The Supreme Court said that our adjudication of the status of the wool in the first case was not *res adjudicata* of the dutiable status of the wool in the second case. *United States* v. *Stone & Downer Co.*, 274 U. S. 225, 230. The grounds of such holdings were based upon the proposition that irrespective of the similarity of the goods, they were different shipments on different dates and were ,different entries and therefore, were different goods. The doctrine of estoppel by *res adjudicata* was limited to "the identical importation."

The collector, on October 6, 1924, felt called upon by the mandate of this court and the lower court to reliquidate the entries of the wool involved and classify the same as free of duty (except in entry 1660).

If the wool was free then, two years after the 1922 act had gone into effect, it was free immediately thereafter, on the same date, when he re-reliquidated by reason of section 319. Its tariff status had been definitely fixed by the final judgment of a court of competent jurisdiction, which judgment was in full force and effect. Its status was that of duty-free merchandise, and the collector was given no authority, in section 319, to change such status by a re-reliquidation. In *United States* v. *Kurtz, Stuboeck & Co.*, 5 Ct. Cust. Appls. 144, T. D. 34192, where the collector declined to comply fully with the mandate of the Board of General Appraisers, this court said:

\* \* \* The board may have mistaken the law or misjudged the facts, but its adjudication once made was binding upon all the parties until set aside either on rehearing or by the proper appellate tribunal. *Gray* v. *Brignardello* (1 Wall., 627, 634); *Voorhees* v. *United States Bank* (10 Pet., 449, 473).

In *Harvey* v. *Tyler*, 69 U. S. 328, 342, the Supreme Court of the United States said:

\* \* \* There is, however, one principle underlying all these various classes of cases, which may be relied on to carry us through them all when we can be sure of its application. It is, that whenever it appears that a court possessing judicial powers has rightfully obtained jurisdiction of a cause, all its subsequent proceedings are valid, however erroneous they may be, until they are reversed on error, or set aside by some direct proceeding for that purpose. The only difficulty in applying the rule is to ascertain the question of jurisdiction.

To now hold that the particular goods involved in this suit and which were before us in the first *Stone & Downer Co.* case, *supra*, were not free at the time of entry (contrary to our definite and final adjudication), would be, in our judgment, in disregard of the decision of the Supreme Court on the question of *res adjudicata* hereinbefore referred to. If a judgment affecting one entry is not *res adjudicata* of the status of another entry, it follows that the Supreme Court's adjudication in the second case in no wise affects our unmodified valid judgment that the goods were free in the first case.

It is argued by the Government that in certain cases the importer might contend that his goods were free and enter them for warehousing and then protest the classification and enter into litigation which would be in progress at the time a new act was passed and then contend that his goods came under the new act, if in the new act the duty was lower than in the old one. We think this argument is without merit as affecting the issue at bar. If the importer entered his goods in warehouse, and claimed in his protest that they were free, and they were not in fact free, then, by virtue of section 319, the customs authorities should charge the same with the duty provided for in the new act. It would depend upon whether the goods were in fact free or dutiable at the time of entry. The court below in its

decision correctly makes this the test, but, we think, under the circumstances, it erroneously concluded that the particular goods at bar were dutiable goods at the time of entry, and the majority of this court has, in part, fallen into the same error by holding that the goods, having been entered for warehousing, were to be regarded as dutiable goods and as such subject to the application of section 319, *supra*.

The protest should have been *sustained*, and the judgment of the United States Customs Court *reversed*.